**Rex L. BOTHELL, Plaintiff–Appellant,**

v.

**PHASE METRICS, INC.,
Defendant–Appellee.**

No. 01–15474.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 17, 2002.

Filed Aug. 13, 2002.

Michael M. Herrick, Herrick Law Offices, San Francisco, CA, for the plaintiff-appellant.

Melinda S. Reichert, Stephen M. Kociol, and M. Emily Osborne, Brobeck, Phleger & Harrison, Palo Alto, CA, for the defendant-appellee.

Before: HUG and BERZON, Circuit Judges, and LASNIK,* District Judge.

## OPINION

LASNIK, District Judge.

Rex Bothell seeks overtime compensation for hours worked in excess of forty per week and other damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and California state law. Appellee Phase Metrics, Inc., argues that Bothell is an exempt "administrative" employee under both federal and state law and is therefore not entitled to overtime payments.

Just before trial, the district court ordered the parties to submit additional briefing in support of their respective positions. After reviewing the submissions, the Court found that Bothell's "primary duty consisted of the performance of non-manual work, directly related to the management policies or general business operations of his employer and his employer's customers" and which "required the exercise of discretion and independent judgment." The district court concluded that (a) Bothell was an administrative employee who was not entitled to overtime wages or liquidated damages, (b) similarities between federal and state law precluded a finding that Phase Metrics' failure to pay wages was "willful" under state law, and (c) Bothell's state law claim for overtime wages was governed by the analysis set forth in the regulations implementing the FLSA. Summary judgment was granted in favor of Phase Metrics on all claims.

Bothell filed a timely notice of appeal on March 12, 2001. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we reverse.

## FACTS

Phase Metrics, Inc., designs, manufactures, and sells robotic test and inspection equipment for the data storage industry. Bothell began installing, troubleshooting, and maintaining Phase Metrics' products as an hourly, non-exempt, contract employee hired through a third party. On or about November 11, 1997, Phase Metrics

---

* Honorable Robert S. Lasnik, United States District Judge for the Western District of Washington, sitting by designation.

offered Bothell a position as a field service engineer working directly for Phase Metrics. Although Bothell's work activities remained the same, the position with Phase Metrics was salaried and he was considered exempt from the overtime wage provisions. Bothell was employed by Phase Metrics for approximately one year from November 1997 to November 1998.

Phase Metrics assigned Bothell as a field service engineer for one of its largest clients, Max Media, Inc., a manufacturer of disk drives. In that capacity, Bothell spent the majority of his time at the Max Media facility, coming to the Phase Metrics office two or three times a week to do paperwork, meet with his supervisors, review new products, and/or pick up supplies. Although the parties agree that Bothell was Phase Metrics' main contact with Max Media, they fundamentally disagree regarding the nature of Bothell's daily activities.

Phase Metrics argues that Bothell was the company representative to Max Media and independently managed the Max Media customer account. In support, Phase Metrics has offered a job description for the field service engineer position, the declarations of various Phase Metrics employees, the declaration of a former Max Media employee, and a selection of Bothell's activity records and time cards. These sources, although not entirely consistent

with each other, generally portray Bothell as an "account manager" who performed his job independently, made or recommended "decisions critical to both Phase Metrics and Max Media," and supervised the manual tasks of installation, repair, and maintenance.[1]

Bothell's testimony regarding his daily work activities creates an entirely different impression. During his deposition, Bothell was asked to review and comment on the job description for the field service engineer position, which reads:

BS, BA, ME, EE, preferred but not required. 3–5 years experience in installing, maintaining, and troubleshooting complex electromechanical and computer controlled systems. Requires the ability to independently manage a customer account, appropriately manage and staff for installations, upgrades, improvements, and supply appropriate reports and statistical data to home office on the performance level of both machines and personnel.

Requires strong communication and writing skills, must provide technical supervision of 2–6 people. Must independently manage the customer support services for at least one customer.

Must be responsible for billing and collecting of all purchase orders and making all warranty decisions. Must be

---

1. The evidence offered by Phase Metrics, if left uncontradicted, could support findings that Bothell independently managed robotics-related customer services for Phase Metrics, was in constant communication with Max Media's management and production employees, would identify problems in the Max Media facility and recommended changes in practice or equipment, determined (sometimes after negotiation with Max Media) whether equipment was under warranty and whether the customer would be billed for repairs/replacements, "set policy with respect to Max Media as to what Phase Metrics would or would not bill when it came to repair work," spent a majority of his time in meetings with Max Media personnel, performing site inspections, or conducting other nonmanual activities, exercised discretion and independent judgment in his efforts to keep Max Media happy, had authority to schedule "down time" on Max Media's equipment, arranged staffing for and supervised product installations, worked independently with very little direct supervision from his manager, set his own working schedule based on Max Media's needs, and had responsibilities which "often mirrored those of the Max Media manager."

able to teach operations and maintenance classes to customers' staff engineers, technicians, and operators. Must have a formal regularly scheduled meeting with customer and provide issues list status.

Bothell testified that his job was to install, troubleshoot, and maintain Phase Metrics' products at Max Media's facility and that the other portions of the above job description did not accurately reflect the day-to-day reality of the work he performed. Specifically, Bothell testified that, although he had "3–5 years experience" and was Phase Metrics' main point of contact with Max Media, he did not independently manage a customer account, compile or produce statistical data, evaluate the performance of machines or people, supervise other employees, have authority to make repair or warranty determinations of any significance, participate in billing, teach classes, control his own schedule, or have regularly scheduled meetings with Max Media representatives.

According to Bothell, his primary duties were to keep Phase Metrics' equipment in good working order and to act as a conduit for information between his employer and its customer. Bothell testified that, over a fifty-two week period, he worked with crews to install ten machines, each of which took approximately two weeks: installations, including the paperwork and customer contacts directly associated with those installations, took up approximately 40% of his time. In addition, Bothell spent additional time troubleshooting and maintaining the existing machines. The remainder of his time was spent responding to customer calls, learning about systems and procedures, and completing the paperwork required by Phase Metrics. Any authority a field service engineer might have had in theory was severely curtailed in practice because the supervisor expected to be kept informed of all but the most trivial happenings, Bothell was never given

final decision-making authority for any specific dollar limit, and all parts were stored at the home office and could be obtained only through the supervisor.

## STANDARD OF REVIEW

■ Whether Bothell's activities as a field service engineer excluded him from the overtime benefits of the FLSA is a question of law and the court reviews the district court's decision *de novo*. *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714, 106 S.Ct. 1527, 89 L.Ed.2d 739 (1986). How Bothell spent his working time is a question of fact reviewed under the clearly erroneous standard. *Bratt v. County of Los Angeles*, 912 F.2d 1066, 1068 (9th Cir.1990), *cert. denied*, 498 U.S. 1086, 111 S.Ct. 962, 112 L.Ed.2d 1049 (1991); *O'Dell v. Alyeska Pipeline Serv. Co.*, 856 F.2d 1452, 1453 (9th Cir.1988). Because Bothell is appealing a summary judgment against him, we view the evidence under the same standard used by the district court and must determine whether, viewing the evidence in the light most favorable to Bothell, there are any genuine issues of material fact. *Webster v. Public Sch. Employees of Wash., Inc.*, 247 F.3d 910, 912 n. 1, 913 (9th Cir.2001).

## DISCUSSION

### I. FLSA Claims

■ The FLSA requires that employers ordinarily pay their employees time and one-half for work exceeding forty hours per week. 29 U.S.C. § 207(a)(1). The Act provides an exemption from overtime for persons "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). An "employer who claims an exemption from the FLSA has the burden of showing that the exemption applies." *Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151 (9th Cir.1983). Because the FLSA "is to be liberally con-

strued to apply to the furthest reaches consistent with Congressional direction ... FLSA exemptions are to be narrowly construed against ... employers and are to be withheld except as to persons plainly and unmistakenly within their terms and spirit." *Klem v. County of Santa Clara,* 208 F.3d 1085, 1089 (9th Cir.2000) (internal quotation marks and citations omitted).

■ The regulations applicable to this case are described as the "short test" and define an "employee employed in a bona fide ... administrative ... capacity" as any employee:

(a) who is compensated on a "salary basis" at a rate of at least $250 per week; and

(b) whose "primary duty consists of ... [t]he performance of office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers;" and

(c) whose duties include work "requiring the exercise of discretion and independent judgment."

29 C.F.R. § 541.2. "The criteria provided by regulations are absolute and the employer must prove that any particular employee meets every requirement before the employee will be deprived of the protection of the Act." *Mitchell v. Williams,* 420 F.2d 67, 69 (8th Cir.1969). Thus, Phase Metrics must prove that Bothell meets all of the requirements in this regulation before he can be held exempt from coverage under the FLSA. *Bratt,* 912 F.2d at 1069.

For purposes of this appeal, the court must determine whether Bothell raised a genuine issue of material fact as to any of the "short test" requirements of 29 C.F.R. § 541.2. Each requirement is considered below.

(a) Salary

It is undisputed that Bothell was "compensated for his services on a salary or fee basis at a rate of not less than $250 per week."

(b) Primary Duty

■ The key issue is whether Bothell's primary duty while employed at Phase Metrics involved the performance of non-manual work "directly related to *management policies* or *general* business operations" of Phase Metrics and/or Max Media. 29 C.F.R. § 541.2 (emphasis added). This requirement is met if the employee engages in "running the business itself or determining its overall course or policies," not just in the day-to-day carrying out of the business' affairs. *Bratt,* 912 F.2d at 1070.

Even if we assume that Bothell's work was primarily non-manual,[2] Phase Metrics still has the burden of demonstrating that Bothell's work related to management or general business operations. *See* 29 C.F.R. § 541.202(a) (work need not be "manual" or "repetitive" to be classified as routine, non-administrative work). In determining whether work relates to management or general business operations, the district court applied the "administration/production dichotomy" suggested by the Secretary of Labor's interpretive regulations. Those regulations state:

The phrase "directly related to management policies or general business operations of his employer or his employer's customers" describes *those types of activities* relating to the administrative operations of a business as distinguished from "production" or, in a retail or service establishment, "sales" work. In addition to describing *the types of activities,* the phrase limits the exemption to persons who perform work of *substantial importance* to the management or

---

**2.** The parties dispute the extent to which Bothell performed non-manual work.

operation of the business of his employer or his employer's customers.

29 C.F.R. § 541.205(a) (emphasis added).

The district court, in applying the administration/ production dichotomy, noted that Phase Metrics was primarily engaged in the design, manufacture, and sale of test equipment. Therefore, the court held, Bothell's customer service work was "ancillary" to Phase Metrics' main activities, and, because it was "ancillary," not "production" work. The court also held that Bothell's work was "of substantial importance" and therefore was administrative work. Both aspects of this conclusion were premature.

(i) The Administration/Production Dichotomy

Work relating to customer service of products sold is not necessarily "administrative" work as that term is commonly understood. In this case, for example, Phase Metrics does exist to design, manufacture, and sell test equipment. But, as Phase Metrics acknowledges, its equipment is "technologically advanced." Customers require installation, training, and service assistance in order successfully to operate the equipment and are unlikely to buy such equipment unless there is such assistance. Customer service activities, therefore, go to the heart of Phase Metrics' marketplace offerings, not to the internal administration of Phase Metrics' business (or that of its customers).[3]

As this case suggests, the administration/production dichotomy is useful only to the extent that it helps clarify the phrase "work directly related to the management policies or general business operations." *Webster*, 247 F.3d at 916. Indeed, the

regulation from which the dichotomy derives does not stand alone. Rather, the administrative exemption is explicated in a series of interpretive regulations, of which 29 C.F.R. § 541.205(a) is only one, attempting to clarify the elusive meaning of the term "administration." *See, e.g.,* 29 C.F.R. §§ 541.2; 541.202; 541.203; 541.205. In particular, 29 C.F.R. § 541.205(a) must be read in conjunction with § 541.205(b) which specifies:

> The administrative operations of the business include the work performed by so-called white-collar employees engaged in "servicing" a business as, for example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control.

Relying, in part, on *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1 (1st Cir.1997), and misapplying § 541.205(b), the district court determined that *all* activities "ancillary" to a business' core activities are "administrative" activities. Some cases do use the term "ancillary" as a short-hand description of administrative activities. *See, e.g., John Alden*, 126 F.3d at 10; *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 904–905 (3rd Cir.1991). On close examination, however, those cases use the term to describe those activities which are *both* ancillary to "production" *and* listed in 29 C.F.R. § 541.205(b). *See, e.g., Cooper Elec.*, 940 F.2d at 904–905 (" 'Servicing' a business within the meaning of 29 C.F.R. § 541.205(b) denotes employment activity *ancillary* to an employer's principal production activity, whether that be production of a commodity or commodities, ... goods or services.") (emphasis in original)

---

**3.** We recognize that *Orphanos v. Charles Indus., Ltd.,* 1996 WL 437380 (N.D.Ill. July 29, 1996) reached the opposite conclusion on similar facts. We do not find that opinion persuasive. *Orphanos* reached its conclusion with little reasoning, because the plaintiff in that case "[did] not seriously contest defendant's assertion that her job consisted primarily of non-manual activities relating to the administrative operations of the business." *Id.* at *3.

(internal citation and quotation marks omitted). *John Alden* stressed that the daily *tasks* performed by an insurance marketing representative, including managing hundreds of agents and developing "customer sales *generally*," were consistent with the explanation of administrative activities in 29 C.F.R. § 541.205(b). *John Alden*, 126 F.3d at 10 (emphasis in original) (internal citation and quotation marks omitted). The holding in *John Alden* that the marketing representatives were administrative employees thus rested, at least in part, on an analysis of the marketing manager's *duties* consistent with § 541.205(b), not just a formalistic parsing of the company's "primary" business purpose.

The other pertinent cases from our sister circuits similarly regard the administration/production dichotomy as but one piece of the larger inquiry, recognizing that a court must "constru[e] the statutes and applicable regulations as a whole." *Webster*, 247 F.3d at 916.[4] Indeed, some cases analyze the primary duty test without referencing the § 541.205(a) dichotomy at all.[5] This approach is sometimes appropriate because, as we have said, the dichotomy is but one analytical tool, to be used only to the extent it clarifies the analysis. Only when work falls "squarely on the 'production' side of the line," has the administration/production dichotomy been determinative.[6]

The administration/production distinction thus distinguishes between work related to the goods and services which constitute the business' marketplace offerings and work which contributes to "running the business itself."[7] *Bratt*, 912 F.2d at 1070. It is not meant to differentiate between a company's "primary" marketplace offering and secondary or tertiary marketplace offerings. Moreover, the distinction should only be employed as a tool towards answering the ultimate question, whether work is "directly related to management policies or general business operations" (29 C.F.R. § 541.2(a)(1)), not as an end in itself.

This case illustrates the point. Defining Bothell's work as "ancillary customer service" work does not end the analysis. Some types of "customer service" work

4. See *Dalheim v. KDFW–TV*, 918 F.2d 1220, 1231 (5th Cir.1990) (administrative exemption does not apply to news producers who perform production work *and* do not perform § 541.205(b) duties); *Haywood v. North Am. Van Lines, Inc.*, 121 F.3d 1066, 1072 (7th Cir.1997) (administrative exemption does apply to customer service representative who does not perform production work *and* does perform § 541.205(b) duties); *Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 540 (7th Cir.1999) (tax auditor was not production worker because such a use of the dichotomy would contradict 29 C.F.R. § 541.205(c)(5)). Cf. *Douglas v. Argo–Tech Corp.*, 113 F.3d 67, 72 (6th Cir.1997) (administrative exemption does apply to union vice president who does not perform production work *and* does influence policy decisions).

5. See, e.g., *West v. Anne Arundel County*, 137 F.3d 752, 764 (4th Cir.1998) (training lieutenants in fire departments are administrative employees); *Cowart v. Ingalls Shipbuilding, Inc.*, 213 F.3d 261, 267 (5th Cir.2000) (senior production planners are administrative employees); *Jarrett v. ERC Properties, Inc.*, 211 F.3d 1078, 1082 (8th Cir.2000) (site manager was not administrative employee).

6. *Reich v. State of New York*, 3 F.3d 581, 587–588 (2nd Cir.1993), *overruled by implication on other grounds by Seminole Tribe v. Florida*, 517 U.S. 44, 59–66, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (criminal investigators are production workers). See also *Cooper Elec.*, 940 F.2d at 904–905 (insurance salesmen are production workers); *Shockley v. City of Newport News*, 997 F.2d 18, 29 (4th Cir.1993) (police sergeants staffing "crime line" are production workers).

7. Similarly, if an employee's work helps to "run the business" of a customer, such work would also be administrative. 29 C.F.R. § 541.205(d).

might fit the definition of § 541.205(b). *See, e.g., Haywood,* 121 F.3d at 1072 (negotiating with clients and settling damage claims are duties consistent with the definition of § 541.205(b)). Other types of "customer service" work, such as equipment repair, would not.

The record contains evidence which could support contrary findings regarding the nature of Bothell's work. If left uncontradicted, Phase Metrics' evidence could lead to the conclusion that (1) Bothell managed Max Media's account and performed all of the administrative aspects of that task, such as staffing, supervision, and billing; (2) Bothell not only implemented, but also developed warranty policy for Phase Metrics; (3) he acted as an advisor to the production department of Max Media; and (4) his manual activities, such as installation, troubleshooting, and repair, were an insignificant part of his duties and/or were directly related to his non-manual administrative tasks. Such findings could support the ultimate conclusion that Bothell's work directly related to management policies and general business operations.

On the other hand, Bothell's evidence, if accepted as true, could support a finding that he was a highly skilled repairman who, rather than traveling from job-site to job-site, was assigned to a specific facility and charged with keeping its equipment in good working order. Under his version of the facts, Bothell was the high-tech equivalent of the Xerox machine man who meets and confers with customers to identify the problem, diagnoses the malfunction, formulates a work plan, repairs the equipment based on procedures established by the manufacturer, and fills out a field service report to enable his employer to bill for the work. His primary duty was to install, troubleshoot, and maintain Max Media equipment.

If Bothell was essentially a repairman, then he did not engage in "running the business itself or determining its overall course or policies." *Bratt,* 912 F.2d. at 1070. This holds true whether or not customer service was a primary, secondary or "ancillary" part of Phase Metrics' marketplace offerings. In short, Bothell's work should not be labeled "administrative" merely because Phase Metrics chose to provide on-site customer service to a few select customers, rather than as a separate product line. A fact-specific inquiry is needed.

(ii) Substantial Importance

Moreover, even if we assume that Bothell's work was administrative, to meet the second part of 29 C.F.R. § 541.205(a), this work must be of "substantial importance" to the "management or operation" of Phase Metrics or its customer Max Media. Because the record could support the conclusion that Bothell was essentially a highly skilled repairman, it is premature to conclude that his work was "substantially important" to the *management or operation* of either Phase Metrics or Max Media. *Accord* 29 C.F.R. § 541.205(c)(2) (an employee operating expensive equipment does work with serious consequences but does not perform work of substantial importance to the *management or operation of the business*) (emphasis added). A repairman does not engage in "running the business itself or determining its overall course or policies." *Bratt,* 912 F.2d at 1070.

It is impossible to determine whether Bothell's work was exempt under 29 C.F.R. §§ 541.203, 541.205, and 541.206 until the nature of his daily activities is resolved by the fact-finder. If Bothell's primary duty was to manage the Max Media account, creating policy for Phase Metrics or assisting Max Media in running its general business operations (rather than

its production capabilities), his employment would satisfy the primary duty requirement of the "short test." If, however, the fact-finder concludes that Bothell was a highly skilled repairman whose primary duty was to install, troubleshoot, and maintain production equipment, he would not qualify as exempt and would be entitled to overtime compensation. This matter should be remanded to the district court for trial.

(c) Discretion and Independent Judgment

██ The requirement that the employee "customarily and regularly exercise[ ] discretion and independent judgment" is satisfied if the employee has the ability to compare, evaluate, and choose from possible courses of conduct. The requirement "implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance." 29 C.F.R. § 541.207(a).

There are genuine issues of fact regarding the extent to which Bothell was permitted to make decisions and the importance of the decisions over which he had control. Although he was physically removed from his supervisor, Bothell testified that he had to call or otherwise communicate with him two to five times a day and that all but the smallest decisions were made by the supervisor. The fact that Bothell's work required a great deal of specialized knowledge and skill is not determinative. The regulations specifically warn against confusing "the exercise of discretion and independent judgment" with "the use of skill in applying techniques, procedures, or specific standards." 29 C.F.R. §§ 541.207(b)(1) and (c). Phase Metrics argues that, as a field inspector operating away from his supervisor in a remote location, Bothell necessarily exercised discretion and independent judgment, citing *O'Dell v. Alyeska Pipeline*

*Serv. Co.*, 856 F.2d 1452 (9th Cir.1988). Phase Metrics' reliance on *O'Dell* is misplaced. Both *O'Dell* and its predecessor, *Hoyt v. General Ins. Co. of Am.*, 249 F.2d 589, 590 (9th Cir.1957), ignored the regulations' distinction between the use of discretion and the application of skill, reasoning that such regulations are simply guides that do not bind the court or limit its discretion. *O'Dell*, 856 F.2d at 1454. That view has since been rejected by both the Supreme Court and the Ninth Circuit. *See Auer v. Robbins*, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (the Secretary of Labor's interpretation of her own regulations is entitled to deference and is controlling unless "plainly erroneous or inconsistent with the regulation."); *Webster*, 247 F.3d at 914 ("We must give deference to DOL's regulations interpreting the FLSA.").

Whether Bothell customarily and regularly exercised discretion and independent judgment cannot be ascertained from the existing record. This issue should be remanded to the district court for trial.

## II. State Wage Claims

██ Bothell's claim for overtime compensation under California Labor Code § 1194 and the Industrial Welfare Commission's Manufacturing Wage Order, 8 Cal.Code Regs. § 11010 ("Wage Order") was dismissed because the state law expressly adopts the FLSA analysis. The Wage Order on which Bothell's claim relies provides that "[t]he activities constituting exempt work and non-exempt work shall be construed in the same manner as such terms are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order: 29 C.F.R. §§ 541.201–205, 541.207–208, 541.210, 541.215." Because there are genuine issues of fact regarding the nature of Bothell's employment and daily activities

under the FLSA, the state law claim for overtime compensation should be remanded to the district court for trial.

Bothell's claim for "waiting time" penalties under California Labor Code § 203 was dismissed because Phase Metrics' successful defense of the FLSA claim was considered evidence of its good faith, making it impossible to find "willfulness." On remand the district court should reevaluate its "waiting time" ruling in light of the further proceedings on the FLSA claim.

### III.  Waiver

 Phase Metrics argues that Bothell waived his state claim for overtime compensation by failing to substantively address the issue when the district court requested additional briefing. Unlike the situation in *Foti v. City of Menlo Park*, 146 F.3d 629, 637–38 (9th Cir.1998), Bothell clearly raised and argued his state claim for overtime compensation before the district court. Although Bothell declined to respond to the district court's request for additional briefing, he did not voluntarily relinquish or waive his claim for overtime wages and the district court considered it on its merits. The state wage claim was, therefore, "passed upon below" and is properly before this court on appeal. *Golden Gate Hotel Ass'n v. City and County of San Francisco*, 18 F.3d 1482, 1487 (9th Cir.1994).

### IV.  Bothell's Request for Summary Judgment

As discussed in Sections I and II, there is a genuine dispute regarding the nature of Bothell's employment activities which precludes summary judgment for either party on the existing record.

### CONCLUSION

In finding that Bothell was an exempt administrative employee under the FLSA and California law, the district court ac-cepted Phase Metrics' evidence regarding Bothell's daily activities and ignored or disbelieved Bothell's testimony to the contrary. The nature of Bothell's employment with Phase Metrics is disputed and should not have been resolved on summary judgment. Because Bothell's right to overtime compensation under federal and state law cannot be determined on the record now before the court, this matter is hereby remanded for further factual development and findings to determine his entitlement to such compensation.

REVERSED AND REMANDED.