**Julie WHITE, Plaintiff—Appellant,**

v.

**DIGEX, INC.; Does, 1–10, Defendants—Appellees.**

No. 03–17400.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 16, 2005.

Decided Sept. 20, 2005.

Brian C. Leighton, Esq., Clovis, CA, for Plaintiff–Appellant.

Daniel J. Furniss, Esq., Anne M. Rogaski, Townsend and Townsend and Crew LLP, Palo Alto, CA, for Defendants–Appellees.

Before: SCHROEDER, Chief Judge, CANBY and HAWKINS, Circuit Judges.

## MEMORANDUM *

Julie White appeals the district court's order granting Digex summary judgment. White claims that Digex, her former employer, failed to pay her overtime, discriminated against her on account of her gender and in retaliation for her complaints of gender discrimination and labor code violations, and breached the parties' contract and covenant of good faith and fair dealing. We reverse and remand with respect to White's overtime claims, but we affirm the district court's order in all other respects.[1]

## I. OVERTIME CLAIM

White's overtime claim withstands summary judgment because Digex has failed to show that she is an exempt professional employee.[2] California law requires Digex

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

1. We review de novo the district court's order granting summary judgment. *Godwin v. Hunt Wesson, Inc.,* 150 F.3d 1217, 1219–20 (9th Cir.1998).

2. We affirm the district court's conclusion

to pay White overtime unless it satisfies its burden of proving that she is exempt. *See, e.g., Bothell v. Phase Metrics, Inc.,* 299 F.3d 1120, 1124 (9th Cir.2002). The exemptions are construed narrowly against the employer. *Id.* at 1124—25 (quoting *Kleve v. County of Santa Clara,* 208 F.3d 1085, 1089 (9th Cir.2000)); *Nordquist v. McGraw—Hill Broad. Co.,* 32 Cal.App.4th 555, 562, 38 Cal.Rptr.2d 221 (1995). In order to exempt White from overtime pay, Digex must show that she is a professional, administrative, or executive employee "[1] engaged in work which is primarily intellectual, managerial, or creative, and [2] which requires exercise of discretion and independent judgment, and [3] for which the remuneration is not less than $1150.00 per month." [3] Cal. Indus. Welfare Comm'n Wage Order 4—98, § 1(A)(1998).

■ First, there is a triable issue of fact whether White's position was "primarily [4] intellectual, managerial, or creative." White was a technical troubleshooter, who had to "think through" Pandesic's website problems as they arose. According to White, she "plain and simply, walked Pandesic through why [its] server was having problems." Accepting as we must White's view of the facts, her routine application of technical skill would not qualify as intellectual or creative. *Cf.* 29 C.F.R. § 541.3(c) (1998) (requiring that, in order to qualify for professional exemption, employees in the computer analysis field must engage in

work "predominately intellectual and varied in character (as opposed to routine mental, manual, mechanical, or physical work)"). To be sure, there are other facts in the record, but genuine issues of fact cannot be resolved on summary judgment.

■ Second, there is a triable issue of fact whether White's position required "exercise of discretion and independent judgment" to the extent required for exemption. California looks to federal regulations for guidance in interpreting the exemption. *See Bell,* 87 Cal.App.4th at 814–15, 105 Cal.Rptr.2d 59. The federal regulations required "consistent," or even "customar[y] and regular[ ]," exercise of discretion and judgment.[5] 29 C.F.R. §§ 541.2 (addressing administrative exemption), 541.3 (1998) (addressing professional exemption); *see also Nordquist,* 32 Cal.App.4th at 563, 38 Cal.Rptr.2d 221. The requirement "implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance." *Bothell,* 299 F.3d at 1129 (quoting 29 C.F.R. § 541.207(a) now 29 C.F.R. § 541.202(c)).[6] It is not to be confused with the "use of skill in applying techniques, procedures, or specific standards." *See id.* (quoting 29 C.F.R. § 541.207(c) now 29 C.F.R. § 541.202(e)).

The parties do not dispute that White handled Pandesic's problems without supervision whenever Pandesic called after

that White was not an exempt administrative employee for the reasons stated in its order. *See, e.g., Bell v. Farmers Ins. Exch.,* 87 Cal. App.4th 805, 819–20, 105 Cal.Rptr.2d 59 (2001).

**3.** The parties do not dispute that the third prong is satisfied; White's salary exceeded $1150.00 per month.

**4.** Wage Order 4—98 defines "primarily" as occupying "more than one-half the employee's work time."

**5.** In 2000, after White's termination, California expressly adopted the "customarily and regularly" standard for most exemptions. CAL. LAB.CODE § 515.

**6.** *Bothell,* of course, addressed the administrative exemption, not the professional, but the operative language was practically identical.

hours (unless she could not solve the problem, at which point she would contact others). The majority of White's work was done in the office, however, with supervisors present. Furthermore, the record conflicts on whether White exercised significant independent judgment during her troubleshooting.

Therefore, on this record, Digex failed to show by undisputed facts that White fell within the narrowly-construed category of exempt professional employees.[7] *See, e.g.,* *Bothell,* 299 F.3d at 1127–29 (expressing doubt that a technical repair person could qualify for the administrative exemption). We therefore reverse this part of the district court's judgment and remand for further proceedings.

## II. OTHER CLAIMS

White's remaining claims are not meritorious.

**7.** It also is noteworthy that, before White's "lateral transfer," it appears that she received overtime even though she performed exactly the same duties.

**8.** White does list other adverse employment actions—diminished pay, benefits, stock options, training, among other things. She has submitted no probative evidence that these actions either occurred, or if they did occur, that they were imposed only on White's protected class or in retaliation for her actions. The only evidence shows that employees who had more relevant experience or higher performance received more benefits and employees with less received less.

**9.** The analyses for these causes of action are substantially similar in most respects. For her gender discrimination cause, she must make a prima facie case: "(1) she belongs to a protected class, (2) she was performing according to her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) other employees with qualifications similar to her own were treated more favorably." *Godwin,* 150 F.3d at 1220. If shown, the burden shifts to Digex to show a legitimate, nondiscriminatory reason for its

## A. Violations of California's Fair Employment and Housing Act and Public Policy

Even if we assume that White has made a prima facie case for these actions, Digex has shown a legitimate reason for the termination[8] and White has offered no evidence of pretext.[9] The evidence is uncontradicted that Digex discharged White solely because she was excessively late or entirely absent. *See* *Heyne v. Caruso,* 69 F.3d 1475, 1478—79 (9th Cir.1995) (noting that showing up late for work on two consecutive mornings qualifies as a legitimate, nondiscriminatory reason for termination). White has produced no evidence to show a nexus between her termination and her protected class or complaints or any other evidence of pretext.[10] *See Brinson v. Linda Rose Joint Venture,* 53 F.3d 1044, 1049 (9th Cir.1995) (noting that bare allegations or

action. If shown, White must present evidence of pretext. *Id.*

White's retaliation claims follow the same procedure but with a somewhat different prima facie case: (1) White engaged in a protected activity; (2) she received an adverse employment action; and (3) there is a causal link between White's protected activity and the adverse employment action. *Flait v. N. Am. Watch Corp.,* 3 Cal.App.4th 467, 476, 4 Cal. Rptr.2d 522 (1992).

**10.** The only conceivable pretext offered by White was that White's supervisor, Piombo, authorized her lateness and absences. Thus, when Digex fired White for this conduct, it was a pretext. The district judge convincingly dispelled this theory:

> White does not allege that Mr. Piombo engaged in this conduct in an effort to get her fired, or that his motivation for doing so was that White is female. Moreover, since Piombo no longer was employed by Digex at the time the decision was made to terminate White, he could not have participated in such decision, and if as White alleges she never told those who *did* make the decision of the alleged authorizations, the decision

denials are insufficient to withstand summary judgment). The district court did not err in granting summary judgment on these claims arising from White's termination.

## B. Breach of Contract and Covenant of Good Faith and Fair Dealing

White contends that Digex breached her employment contract by failing to pay her shift and geographical differential and stock options. It did not. The only employment contract in the record stated that White was an "at-will" employee and that nothing else could be promised her. White's offer letters do not offer anything other than what she received. She admits that after her "lateral transfer" she was told that she would no longer receive these benefits.

White's breach of covenant claim likewise fails because she has not established anything but an at-will employment agreement. *See Horn v. Cushman & Wakefield W., Inc.,* 72 Cal.App.4th 798, 819–20, 85 Cal.Rptr.2d 459 (1999).

## III. CONCLUSION

The summary judgment is reversed with regard to White's overtime claims, and that claim is remanded to the district court for further proceedings. In all other respects, the judgment of the district court is affirmed. The parties will bear their own costs in this appeal.

AFFIRMED in part; REVERSED and REMANDED in part.

---

to terminate White could not have been a pretext.... Moreover, the evidence shows that Piombo left Digex in mid-July ... which means that at least four and likely as many as seven of the undisputed instances of tardiness and/or absenteeism occurred after Mr. Piombo's departure.... White does not allege that [her new supervisor] similarly authorized, then neglected to acknowledge authorizing, any instances of tardiness during the final month and a half or so of her employment.