**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

GINA MCKEEN-CHAPLIN,
individually, on behalf of others
similarly situated, and on behalf of
the general public,
*Plaintiff-Appellant*,

v.

PROVIDENT SAVINGS BANK, FSB,
*Defendant-Appellee.*

No. 15-16758

D.C. No.
2:12-cv-03035-
GEB-AC

OPINION

Appeal from the United States District Court
for the Eastern District of California
Garland E. Burrell, Jr., District Judge, Presiding

Argued and Submitted April 21, 2017
San Francisco, California

Filed July 5, 2017

Before: Sidney R. Thomas, Chief Judge, Mary H. Murguia,
Circuit Judge, and Michael M. Baylson,[*] District Judge.

Opinion by Chief Judge Thomas

[*] The Honorable Michael M. Baylson, United States District Judge for
the Eastern District of Pennsylvania, sitting by designation.

## SUMMARY[**]

### Labor Law

Reversing the district court's grant of summary judgment in favor of the defendant in an action under the Fair Labor Standards Act, the panel held that mortgage underwriters were entitled to overtime compensation for hours worked in excess of forty per week.

Applying the analysis used by the Second Circuit, rather than the Sixth Circuit, the panel held that, because the mortgage underwriters' primary job duty did not relate to their employer bank's management or general business operations, the administrative employee exemption to the Act's overtime requirements did not apply.

### COUNSEL

Matthew C. Helland (argued) and Daniel S. Brome, Nichols Kaster LLP,  San Francisco, California; for Plaintiff-Appellant.

Michael L. Ludwig (argued), Howard M. Knee (argued), and Caitlin Sanders, Blank Rome LLP, Los Angeles, California, for Defendant-Appellee.

---

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

**OPINION**

THOMAS, Chief Judge:

This appeal presents the question of whether a class of mortgage underwriters are entitled to overtime compensation under the Fair Labor Standards Act ("FLSA" or "the Act"), 29 U.S.C. § 201 *et seq.*, for hours worked in excess of forty per week.  We conclude that, because the mortgage underwriters' primary job duty does not relate to the bank's management or general business operations, the administrative employee exemption under 29 U.S.C. § 213(a)(1) and 29 C.F.R. § 541.200(a) does not apply,[1] and the underwriters are entitled to overtime compensation.

I

Provident Savings Bank ("Provident" or "the Bank") sells mortgage loans to consumers purchasing or refinancing homes and then resells those funded loans on the secondary market. Mortgage underwriters at Provident review mortgage loan applications using guidelines established by Provident and investors in the secondary market, including Fannie Mae, Freddie Mac, and the Fair Housing Administration.

---

[1] The mortgage underwriters also argue that they do not exercise discretion and independent judgment with respect to matters of significance, but we need not reach this argument because the test to qualify for the administrative exemption under FLSA is conjunctive, not disjunctive, *see Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1125 (9th Cir. 2002), and Provident bears the burden of proving the employees in question satisfy each of the administrative exemption requirements, *id.* at 1124.

Loan transactions begin with a loan officer or broker who works with a borrower to select a particular loan product. A loan processor then runs a credit check, gathers further documentation, assembles the file for the underwriter, and runs the loan through an automated underwriting system. The automated system applies certain guidelines based on the information input and then returns a preliminary decision. From there, the file goes to a mortgage underwriter, who verifies the information put into the automated system and compares the borrower's information against the applicable guidelines, which are specific to each loan product.

Mortgage underwriters are responsible for thoroughly analyzing complex customer loan applications and determining borrower creditworthiness in order to ultimately decide whether Provident will accept the requested loan. They may impose conditions on a loan application and refuse to approve the loan until the borrower satisfies those conditions. The decision as to whether to impose conditions is ordinarily controlled by the applicable guidelines, but the underwriters can include additional conditions. They can also suggest a "counteroffer"—which would be communicated through the loan officer—in cases where a borrower does not qualify for the loan product selected, but might qualify for a different loan. Underwriters may also request that Provident make exceptions in certain cases by approving a loan that does not satisfy the guidelines.

After a mortgage underwriter approves a loan, it is sent to other Provident employees who finalize the loan funding. Underwriters say that whether a loan is funded ultimately depends on factors beyond the underwriter's control. Another group of Provident employees sells funded loans in the secondary market.

On behalf of herself and a class of mortgage underwriters, Gina McKeen-Chaplin brought this action seeking overtime compensation under FSLA. The district court conditionally certified an opt-in class of current and former mortgage underwriters at Provident. Initially, the district court denied cross motions for summary judgment and set the case for trial. But later, on the parties' joint motion for reconsideration, the court concluded that the underwriters qualify for the administrative exemption, based on finding that their primary duty included "quality control" or similar activities directly related to Provident's general business operations, and thus the district court granted summary judgment in favor of Provident. This timely appeal followed.

Whether an employee's primary duties exclude her from FLSA overtime benefits is a question of law to be reviewed de novo. *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1124 (9th Cir. 2002); *Bratt v. Cty. of L.A.*, 912 F.2d 1066, 1068 (9th Cir. 1990). And we "must give deference to DOL's [the Department of Labor's] regulations interpreting the FLSA." *Webster v. Pub. Sch. Emps. of Wash., Inc.*, 247 F.3d 910, 914 (9th Cir. 2001) (citing *Auer v. Robbins*, 519 U.S. 452, 457 (1997)).

We review a district court's grant of summary judgment de novo. *Swoger v. Rare Coin Wholesalers*, 803 F.3d 1045, 1047 (9th Cir. 2015). Summary judgment is appropriate where "no genuine dispute as to any material fact" exists such that "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). Though a denial of summary judgment is ordinarily unappealable because it is not a final order, where it is "coupled with a grant of summary judgment to the opposing party," both orders are reviewable de novo.

*Padfield v. AIG Life Ins. Co.*, 290 F.3d 1121, 1124 (9th Cir. 2002).

## II

Ordinarily, FLSA provisions require employers to pay employees time and a half for overtime work—that is, work in excess of forty hours per week.  29 U.S.C. § 207(a)(1). But employees who are "employed in a bona fide executive, administrative, or professional capacity" are exempt from those provisions.  29 U.S.C. § 213(a)(1).  Employers who claim the so-called administrative exemption under FLSA bear the burden of proving its applicability to the employees in question. *Bothell*, 299 F.3d at 1124.  Exemptions are to be construed narrowly. *Id.* at 1125.  The overtime requirements have long been intended to financially pressure employers to "spread employment" and to assure workers "additional pay to compensate them for the burden of a workweek beyond the hours fixed in the [A]ct." *Overnight Motor Transp. Co., Inc. v. Missel*, 316 U.S. 572, 577–78 (1942), *superseded by statute*, Portal-to-Portal Act, 61 Stat. 86–87 (authorizing courts to deny or limit liquidated damages awarded for FLSA violations), *as recognized in Trans World Airlines v. Thurston*, 469 U.S. 111, 128 n.22 (1985).  Thus, FLSA "is to be liberally construed to apply to the furthest reaches consistent with Congressional direction" and exemptions "are to be withheld except as to persons plainly and unmistakably within their terms and spirit." *Bothell*, 299 F.3d at 1124–25 (quoting *Klem v. Cty. of Santa Clara*, 208 F.3d 1085, 1089 (9th Cir. 2000)).

A

To determine whether employees qualify for the administrative exemption, the Secretary of Labor has formulated a "short duties test." *Bothell*, 299 F.3d at 1126.[2] A qualifying employee must (1) be compensated not less than $455 per week; (2) perform as her primary duty "office or non-manual work related to the management or general business operations of the employer or the employer's customers;" and (3) have as her primary duty "the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a).  An employee's primary duty is "the principal, main, major or most important duty that the employee performs."  29 C.F.R. § 541.700(a). These three conditions "are explicit prerequisites to exemption, not merely suggested guidelines." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960).

Accordingly, Provident must prove that the mortgage underwriters meet all three duty requirements.  *See Bothell*, 299 F.3d at 1125 (citing *Mitchell v. Williams*, 420 F.2d 67, 69 (8th Cir. 1969) ("The criteria provided by regulations are absolute and the employer must prove that any particular employee meets every requirement before the employee will be deprived of the protection of [FLSA].")); *Bratt*, 912 F.2d at 1069.  It is undisputed that the salary requirement is

---

[2] We have explained previously that the Secretary's new regulations issued in 2004 do "not represent a change in the law." *In re Farmers Ins. Exch.*, 481 F.3d 1119, 1128 (9th Cir. 2007); *see also Roe-Midgett v. CC Services, Inc.*, 512 F.3d 865, 870–71 (7th Cir. 2008) (noting that the new "general rule . . . merely restates the short test's two 'duties' requirements" and that the "Secretary has characterized the promulgation of the new rules as an effort to 'consolidate and streamline' the dense and unwieldy regulatory text of the old regulations").

satisfied. But because the underwriters' duties go to the heart of Provident's marketplace offerings, not to the internal administration of Provident's business, *see Bothell*, 299 F.3d at 1126, Provident cannot prove that the mortgage underwriters qualify for the administrative exemption.

B

To satisfy the second requirement, an employee's primary duty must involve office or "non-manual work directly related to the *management policies* or *general* business operations" of Provident or Provident's customers. *Bothell*, 299 F.3d at 1125 (emphasis in original) (quoting 29 C.F.R. § 541.200). Said otherwise, "an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a). Courts of appeal commonly refer to this framework for understanding whether employees satisfy the second requirement as the "administrative-production dichotomy." Its purpose is "to distinguish 'between work related to the goods and services which constitute the business' marketplace offerings and work which contributes to 'running the business itself.'" DOL Wage & Hour Div. Op. Ltr., 2010 WL 1822423, *3 (Mar. 24, 2010) (quoting *Bothell*, 299 F.3d at 1127 (quoting *Bratt*, 912 F.2d at 1070)). In our own words, "[t]his requirement is met if the employee engages in 'running the business itself or determining its overall course or policies,' not just in the day-to-day carrying out of the business' affairs." *Bothell*, 299 F.3d at 1125 (quoting *Bratt*, 912 F.2d at 1070); *see also Dalheim v. KDFW-TV*, 918 F.2d 1220, 1230 (5th Cir. 1990) (describing the dichotomy as distinguishing between "employees whose

primary duty is administering the business affairs of the enterprise from those whose primary duty is producing the commodity or commodities, whether goods or services, that the enterprise exists to produce and market").

But the dichotomy "is only determinative if the work 'falls squarely on the production side of the line.'" 69 Fed. Reg. 22122, 22141 (Apr. 23, 2004) (quoting *Bothell*, 299 F.3d at 1127).[3] And this means the analysis can be complicated. In fact, in the last decade, two of our sister Circuits have assessed whether mortgage underwriters qualify for FLSA's administrative exemption and have come to opposite conclusions. The Second Circuit held in *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529 (2d Cir. 2009), that "the job of underwriter . . . falls under the category of production rather than of administrative work." *Id.* at 535.

In contrast, the Sixth Circuit held recently that mortgage underwriters are exempt administrators, explaining that they "perform work that services the Bank's business, something ancillary to [the Bank's] principal production activity." *Lutz v. Huntington Bancshares, Inc.*, 815 F.3d 988, 995 (6th Cir.

---

[3] *See, e.g.*, *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 532 (2d Cir. 2009) ("The line between administrative and production jobs is not a clear one, particularly given that the item being produced—such as 'criminal investigations'—is often an intangible service rather than a material good."); *Desmond v. PNGI Charles Town Gaming, LLC*, 564 F.3d 688, 694 (4th Cir. 2009) ("Although the administrative-production dichotomy is an imperfect analytical tool in a service-oriented employment context, it is still a useful construct."); *Martin v. Indiana Michigan Power Co.*, 381 F.3d 574, 582 (6th Cir. 2004) (pointing out that the administrative-production dichotomy is not absolute); *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 9 (1st Cir. 1997) ("[A]pplying the administrative-production dichotomy is not as simple as drawing the line between white-collar and blue-collar workers.").

2016). In disagreeing with the Second Circuit, the Sixth Circuit understood mortgage underwriters to perform "administrative work because they assist in the running and servicing of the Bank's business by making decisions about when [the Bank] should take on certain kinds of credit risk, something that is ancillary to the Bank's principal production activity of selling loans." *Id.* at 993; *see also id.* at 995 (explaining that Sixth Circuit precedent focuses "on whether an employee helps run or service a business—not whether that employee's duties merely touch on a production activity").[4]

Given the undisputed facts presented in this case, we conclude that the Second Circuit's analysis in *Davis* should apply. Provident's mortgage underwriters do not decide if Provident *should* take on risk, but instead assess whether, given the guidelines provided to them from above, the particular loan at issue falls within the range of risk Provident has determined it is willing to take. Assessing the loan's riskiness according to relevant guidelines is quite distinct from assessing or determining Provident's business interests. Mortgage underwriters are *told* what is in Provident's best interest, and then asked to ensure that the product being sold fits within criteria set by others. In *Davis*, the Second Circuit came to a similar conclusion:

> Underwriters . . . performed work that was primarily functional rather than conceptual.

---

[4] The *Lutz* court did not cite this Circuit's case law applying the administrative exemption—which has been endorsed by DOL in several documents. *See, e.g.*, 69 Fed. Reg. at 22141 (quoting *Bothell*, 299 F.3d at 1127); DOL Wage & Hour Div. Op. Ltr., at *3 (Mar. 24, 2010) (citing *Bothell*, 299 F.3d at 1127).

> They were not at the heart of the company's business operations. They had no involvement in determining the future strategy or direction of the business, nor did they perform any other function that in any way related to the business's overall efficiency or mode of operation. It is undisputed that the underwriters played no role in the establishment of [the Bank's] credit policy.

587 F.3d at 535. We agree.

## C

DOL's codified examples of exempt administrative employees, including especially the descriptions of insurance claims adjusters and employees in the financial services industry, buttress our conclusion. 29 C.F.R. § 541.203(a), (b). Recently, in *In re Farmers Ins. Exch.*, 481 F.3d 1119 (9th Cir. 2007), we considered whether claims adjusters of many varieties are exempt from FLSA's overtime provisions. *Id.* at 1124. We relied heavily on DOL's regulations and also on several DOL Opinion Letters that discussed claims adjusters. *Id.* at 1128–29. As we explained then, "the fact that the adjusters 'are not merely pursuing a standardized format for resolving claims, but rather are using their own judgment about what the facts show, who is liable, what a claim is worth, and how to handle the negotiations with either a policyholder or a third-party'" was "[e]ssential to the DOL's opinion." *Id.* at 1128 (quoting at DOL Wage & Hour Div. Op. Ltr., at 4–5 (Nov. 19, 2002)).

Specifically, the example describes duties such as "interviewing," "inspecting property damage,"

"reviewing factual information," "evaluating and making recommendations regarding coverage of claims," "determining liability," "negotiating settlements," and "making recommendations regarding litigation."[5]  29 C.F.R. § 541.203(a).    These duties differ from the duties of Provident's mortgage underwriters.  The underwriters do not interview or inspect property, negotiate settlements or make litigation recommendations.    They do review factual information and evaluate the loan product and consumer information and, in a sense, they assess liability in the form of risk, although that assessment is subject to guidelines that they do not formulate. *See* DOL Wage & Hour Div. Op. Ltr., at *2 (Oct. 29, 1985) (distinguishing appraisers from claims adjusters by pointing out that appraisers "merely inspect damaged vehicles to estimate the cost of labor and materials and to reach an agreed price for repairs . . . are guided primarily by their skill and experience and by written manuals of established labor and material costs").

The financial-services industry example also includes descriptors that do not correspond with the underwriters' primary duty, which aims more at producing a reliable loan than at "advising" customers or "promoting" Provident's financial products. *See* 29 C.F.R. § 541.203(b).  Although mortgage    underwriters    do    "collect[]    and    analyz[e]

---

[5] In full, the example reads: "Insurance claims adjusters generally meet the duties requirements for the administrative exemption, whether they work for an insurance company or other type of company, if their duties include activities such as interviewing insureds, witnesses and physicians; inspecting property damage; reviewing factual information to prepare damage estimates; evaluating and making recommendations regarding coverage of claims; determining liability and total value of a claim; negotiating settlements; and making recommendations regarding litigation."  29 C.F.R. § 541.203(a).

information regarding the customer's income, assets, investments or debts," and do sometimes "determin[e] which financial products best meet the customer's needs and financial circumstances," they do not "advis[e]" customers at all, nor do they "market[], servic[e] or promot[e] the employer's financial products."**[6]** As the Department of Labor has noted, "[w]ork does not qualify as administrative simply because it does not fall squarely on the production side of the line." DOL Wage & Hour Div. Op. Ltr., at *3 (Mar. 24, 2010).

Moreover, the financial-services-industry example does not "create[] an alternative standard for the administrative exemption for employees in the financial services industry" and it "is not an alternative test, and its guidance cannot result in the 'swallowing' of the requirements of 29 C.F.R. § 541.200." *Id.* at *8; *see also Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199, 1205, 1206–07 (2015) (holding that DOL's decision to withdraw its 2006 opinion letter in its 2010 letter did not require notice-and-comment procedures because both were interpretive rules).

DOL has also specifically analyzed mortgage loan officers and made clear that they "do not qualify as bona fide

---

**[6]** In full, the regulation states: "Employees in the financial services industry generally meet the duties requirements for the administrative exemption if their duties include work such as collecting and analyzing information regarding the customer's income, assets, investments or debts; determining which financial products best meet the customer's needs and financial circumstances; advising the customer regarding the advantages and disadvantages of different financial products; and marketing, servicing or promoting the employer's financial products. However, an employee whose primary duty is selling financial products does not qualify for the administrative exception." 29 C.F.R. § 541.203(b).

administrative employees" because they "have a primary duty of making sales for their employers."  DOL Wage & Hour Div. Op. Ltr., at *9 (Mar. 24, 2010).  Mortgage underwriters are distinct from mortgage loan officers in the mortgage production process—most significantly because their primary duty is not making sales on Provident's behalf.  But they are not so distinct as to be lifted from the production side into the ranks of administrators.

Thus, we conclude that where a bank sells mortgage loans and resells the funded loans on the secondary market as a primary font of business, mortgage underwriters who implement guidelines designed by corporate management, and who must ask permission when deviating from protocol, are most accurately considered employees responsible for production, not administrators who manage, guide, and administer the business.  *See Davis*, 587 F.3d at 353 ("[W]e have drawn an important distinction between employees directly producing the good or service that is the primary output of a business and employees performing general administrative work applicable to the running of any business."); DOL Wage & Hour Div. Op. Ltr., at *3 (Mar. 24, 2010) (quoting *Davis*, 587 F.3d at 353); *see also In re Farmers Ins.*, 481 F.3d at 1129 ("We must give deference to the DOL's interpretation of its own regulations.").

## D

The district court concluded that Provident underwriters performed work that related to "quality control," such that it constituted "[w]ork directly related to management or general business operations," within the meaning of 29 C.F.R. § 541.201(b).  But this was a legal conclusion as to the

underwriters' quality control function that was not supported by the record evidence.

The underwriters' statement of undisputed facts outlined several significant aspects of Provident's quality control process. First, prior to closing, Provident used an outside company to perform quality control functions, primarily assessing for material deficiencies that affect salability. That quality control check pulls approximately five per cent of loans, and completely re-underwrites them. Second, a pre-closing quality control process generates reports that are provided to underwriters, and sends a monthly report to Provident's Vice President of Mortgage Operations. Third, the loan servicing department performs post-closing quality control and completely underwrites ten per cent of loans. That department is not staffed by mortgage underwriters. Fourth, the internal audit department reviews the loan process annually.

In recounting the undisputed facts, the district court's opinion does not mention quality control, yet it made the legal conclusion that Provident's underwriters qualify for the administrative exemption primarily because of their quality control duties. The district court mentioned that "Provident uses an outside company to perform quality control functions," and "has an internal Corporate Loan Committee that completely re-underwrites 10% of the loans." Without discussing the significance of those facts, however, the district court then stated that because the "underwriters 'must apply Provident's guidelines or lending criteria as well as agency guidelines . . . to determine whether [a] particular loan falls within the level of risk Provident is willing to accept . . . Provident has shown Plaintiffs' primary duty included

'quality control,'" such that they are entitled to the administrative exemption.

The record does not support this conclusion. And the district court made no finding as to the legal significance of the quality control functions that the record establishes are in place at Provident.

Provident contends that because the underwriters do not work on a manufacturing production line and do not sell, they cannot fall on the production side of the administrative-production dichotomy. This assertion fails to take into account the mortgage underwriters' role within Provident. Indeed, to permit the administrative exemption of an assembly line worker who checks whether a particular part was assembled properly—simply because that role bears a resemblance to quality control—would run counter to the essence of FLSA. But even if mortgage underwriters could not be cast by analogy as workers in an assembly line, the administrative-production dichotomy is not a perfectly determinative one, and the law requires that we construe the administrative exemption narrowly against the employer.

Mortgage underwriters are essential to Provident's business, as are loan officers and many others who do not qualify for FLSA's administrative exemption. *See Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 903 (3d Cir. 1991) ("[I]t is important to consider the nature of the employer's business when deciding whether an employee is an administrative or production worker."). However, the question is not whether an employee is essential to the business, but rather whether her primary duty goes to the heart of internal administration—rather than marketplace offerings. *See Bothell*, 299 F.3d at 1126. Mortgage

underwriters at Provident are not administrators or corporate executives; their tasks are related to the production side of the enterprise.

## E

For these reasons, we must reverse the district court's grant of summary judgment in favor of Provident and remand with instructions to enter summary judgment in favor of Gina McKeen-Chaplin and the mortgage underwriters.

**REVERSED.**