### Julie CAMPANELLI, et al., Plaintiff(s),

v.

### The HERSHEY COMPANY, Defendant(s).

### No. C 08–1862 BZ.

United States District Court, N.D. California.

Feb. 23, 2011.

1186

Thomas J. Brandi, Brian J. Malloy, The Brandi Law Firm, San Francisco, CA, David C. Feola, Hoban & Feola, LLC, Evergreen, CO, for Plaintiffs.

Chris A. Hollinger, Adam P. KohSweeney, Sarah A. Stofferahn, O'Melveny & Meyers LLP, San Francisco, CA, Framroze Murzban Virjee, Michael W. Garrison, Jr., Benjamin J. Kim, O'Melveny & Myers LLP, Los Angeles, CA, for Defendants.

## ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

BERNARD ZIMMERMAN, United States Magistrate Judge.

Plaintiffs have moved for partial summary judgment that the outside sales and administrative exemptions do not apply to their job duties.[1] Docket No. 315. Having considered the papers submitted by the parties and the arguments of counsel, the Court **GRANTS** plaintiffs' motion for the reasons explained below.

### I. *BACKGROUND* [2]

In 2003, defendant The Hershey Company restructured its domestic sales force to adapt to a changing retail environment. As part of the restructuring, defendant created an entry-level Retail Sales Representative (RSR) position. Defendant classified this position as exempt from overtime under both federal and California law, and never paid hourly compensation to RSRs for any overtime they worked.[3]

Under the new retail strategy, RSRs are part of teams that help defendant sell its

1. The parties have consented to the Court's jurisdiction for all proceedings, including entry of final judgment under 28 U.S.C. § 636(c).

2. In this order, the Court will specifically note when material facts are disputed by the parties.

3. RSRs are not eligible to receive commissions on any sales. In addition to their annual salary, RSRs may receive a bonus based on their performance as well as their territory's performance. The target for the bonus is 13% of the RSR's annual salary. Most plaintiffs have annual salaries in the $40,000 to $50,000 range. While both parties chose not

products directly to retail outlets of various sizes, ranging from Walmarts to grocery chains to mom-and-pop stores. Each RSR services retail outlets in a designated sales territory. Last year, defendant employed about 500 RSRs nationwide with approximately 37 working in California.

The parties dispute the scope of the RSRs' job duties. From defendant's perspective, the RSRs are vital to the company's sales. Their job duties include selling defendant's products directly to retail stores, meeting and consulting with key decision makers at retail stores to increase sales, and occasionally assisting retail stores with merchandising [4] when it is incidental to the sales. Plaintiffs disagree with this description of the RSRs' duties. They contend defendant sells most of its products in bulk at the corporate level through other upper-level company employees, such as Customer Service Executives (CSEs). Rather than selling, the RSRs are primarily responsible for merchandising the previously sold products at the retail stores in their district.

In 2008, three former RSRs brought this wage and hour action against defendant. They alleged defendant misclassified them as exempt employees, denying them compensation for the overtime hours they had worked. Defendant denied these allegations, asserting that plaintiffs' employment position satisfies the exemptions from overtime for outside salesmen and administrative employees. In 2010—after 19 additional RSRs had joined the suit—this Court, over defendant's objection, allowed the case to proceed as a collective action for plaintiffs' federal and pendant California claims.[5] Docket No. 157. Following notice,[6] 99 RSRs joined the collective action in addition to the 21 remaining named plaintiffs.[7]

Because plaintiffs filed their complaint almost three years ago, both parties have had ample time to conduct discovery on the issues presented in the case. The record on this motion is almost two feet thick, and includes declarations from 37 plaintiffs as well as RSRs who did not opt-in.[8] The parties also took the depositions of 14 plaintiffs. Even though the Court is

to submit detailed evidence regarding the RSRs' compensation packages, one declaration from defendant states that one plaintiff's annual base salary is $48,564.62, and that she received a bonus of $1,367.39 for the first half of 2009. This first half payment amounts to 2.8% of her annual salary. *See* Slotznick Declaration, Ex. A.

4. The term "merchandising" is susceptible to different meanings. This Court's use of the term refers to activities such as stocking shelves, sorting as well as tagging products, and delivering and setting up product displays.

5. Although this Court granted plaintiffs' request, both parties were informed that the ultimate decision on whether to proceed as a collective action would turn on whether this method would be the superior way of resolving the controversy. *See* Docket No. 157.

6. At the hearing, the parties estimated that about 800 former and current RSRs were sent notice about this lawsuit.

7. This ruling only applies to the named plaintiffs and the RSRs that joined this collective action by certifying that they believed they were not outside salesmen or administrative employees. These named plaintiffs and opt-in plaintiffs are collectively referred to as plaintiffs, although the Court at times uses "RSRs" when generally discussing the employment position at issue. RSRs who chose not to join this collective action are not before the Court and the Court expresses no view on what impact this Order may have on them.

8. Many of the declarations defendant submitted were from RSRs who did not opt-in as a plaintiff. While there is some authority for admitting such declarations, *see Johnson v. Big Lots Stores, Inc.,* 2008 WL 2191305 (E.D.La.2008), in this case declarations from RSRs who, after receiving notice did not certify that they believed that their duties quali-

**1188**

troubled that both parties chose not to submit material portions of the plaintiffs' deposition testimony regarding their actual day-to-day job duties, the totality of the evidence before the Court is voluminous. There is consequently a sufficient record for the Court to determine if a triable issue exists regarding the outside sales and administrative exemptions.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate only when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56. The moving party bears both the initial burden of production as well as the ultimate burden of persuasion to demonstrate that no genuine dispute of material fact remains. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir.2000). Once the moving party meets its initial burden, the nonmoving party is required "to go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotations and citations omitted). If the nonmoving party's evidence is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Courts, however, are required to view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If a reasonable jury could return a verdict in favor of the nonmoving party, summary judgment is inappropriate. *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505.

Here, plaintiffs seek summary adjudication on defendant's affirmative defenses asserting the outside sales and administrative exemptions. Defendant does not argue that plaintiffs have not met their initial burden of production. Rather, defendant's position is that it has submitted probative evidence that raises a genuine dispute as to whether the plaintiffs' job duties fall under the exemptions. Having reviewed the evidence most favorably to defendant, defendant fails to raise a triable issue because the undisputed facts, discussed in detail below, demonstrate that plaintiffs are not outside salesmen or administrative employees.

## III. THE FLSA

In 1938, Congress enacted the Federal Labor Standards Act (FLSA) to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). As part of this effort, the FLSA requires employers to pay overtime compensation to employees who work more than 40 hours per week. *See* 29 U.S.C. § 207(a)(1). Certain employees are exempt from this provision, including outside salesmen and administrative employees. *See* 29 U.S.C. § 213(a)(1). These exemptions are "narrowly construed against the employers seeking to assert them" and are limited to those employees "plainly and

fied them to be outside salesmen or administrative employees, were not very helpful in determining the rights of these plaintiffs. In addition, as plaintiffs have pointed out, these declarations are conclusory and were often taken early in the litigation at a time when the precise issues before the Court were not fully

defined. Nevertheless, plaintiffs did not move to strike these declarations or object to this Court considering them. The Court did consider them especially in trying to understand the different ways in which the plaintiffs and those RSRs who did not opt-in perceived their job duties.

unmistakably" within the exemptions' "terms and spirit." *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1124–25 (9th Cir. 2002) (internal citations and quotations omitted). The employer bears the burden of showing that an exemption applies.[9] *Id.*

The scope of the FLSA's exemptions is not set forth in the Act, but in the regulations and interpretations of the Department of Labor (DOL). *Auer v. Robbins*, 519 U.S. 452, 456, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) ("The FLSA grants the [DOL] broad authority to 'defin[e] and delimi[t]' the scope of the exemption for executive, administrative, and professional employees" (citing 29 U.S.C. § 213(a)(1))). These regulations and interpretations are particularly important to this matter because no other court has evaluated the classification status of employees that have the specific characteristics and job duties of RSRs. DOL's regulations are given controlling weight by courts unless found to be arbitrary, capricious, or contrary to the statute, something that defendant does not argue in its opposition. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). While DOL's interpretations of its regulations do not have the force and effect of law, courts look to them as persuasive authority. *See Christensen v. Harris County*, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944).[10]

During oral argument, defendant suggested that the Ninth Circuit's recent decision in *Christopher v. SmithKline Beecham Corporation* required that this Court give less deference to the DOL regulations. *See* 635 F.3d 383, 2011 WL 489708 (9th Cir.2011). Defendant is incorrect for a number of reasons. First, much of the Ninth Circuit's analysis in *Christopher* seems to focus on the degree of deference to be accorded to the interpretation of the statute and regulations made by the DOL in its amicus brief. *See, e.g.*, 635 F.3d at 394-95, 2011 WL 489708 at *10. Second, unlike the pharmaceutical industry to which the regulations governing sales did not neatly apply because of the legal prohibitions against sales to doctors, here certain provisions of the DOL regulations, such as 29 C.F.R. § 541.503, squarely apply to defendant's RSRs. Plaintiffs' complaint that they do not "sell" to defendant's customers, does not "ignore the structure and realities" of a heavily regulated industry. 635 F.3d at 396, 2011 WL 489708 at *11. Nor does the Ninth Circuit's concern that the DOL had acquiesced in the drug industry's practices for over 70 years apply here; the RSR position is less than 10 years old. *See* 635 F.3d at 399-400, 2011 WL 489708 at *15.

### A. Outside Sales Exemption

Defendant first asserts that RSRs are outside salesmen. For this exemption to apply to plaintiffs, their primary duty must

---

**9.** As the moving party on summary judgment, plaintiffs still have the ultimate burden of persuasion that there is no genuine issue of material fact. *See Nissan*, 210 F.3d at 1102.

**10.** The parties do not dispute that under California law the outside sales and administrative exemptions are similar to those under the FLSA. *See Ramirez v. Yosemite Water Co., Inc.*, 20 Cal.4th 785, 795, 85 Cal.Rptr.2d 844, 978 P.2d 2 (citing Cal. Labor Code § 1171 and Industrial Welfare Commission, Wage Order

No. 7–80, 2(I) for the definition of outside salesmen); 8 Cal.Code Regs. § 11040(1)(A)(2)(f); *Heffelfinger v. Electronic Data Systems Corp.*, 580 F.Supp.2d 933, 950 (C.D.Cal.2008) ("California's exemption has been construed in the same manner as the administrative exemption under the [FLSA]"). Accordingly, the Court finds that California plaintiffs are not outside salesmen or administrative employees under both federal and California law.

be "making sales"[11] or "obtaining orders or contracts for services." 29 C.F.R. § 541.500(a)(1).[12] Primary duty is the "principal, main, major or most important duty" that employees perform. 29 C.F.R. § 541.700. While time alone is not the sole test for primary duty, most employees meet this requirement if they spend more than 50 percent of their time performing exempt work. *Id.*

■ Defendant initially argues that the exemption applies because certain RSRs directly sell products to some retailers without the involvement of a CSE. It is undisputed that some plaintiffs have made these types of sales. But defendant's argument misses the point. The outside sales exemption only applies to plaintiffs if direct selling is their primary duty—not just something they do occasionally or even regularly but on a minimal basis. Although 14 plaintiffs have been deposed, defendant has not pointed to a single plaintiff who has testified that her primary duty was making direct sales. Instead, defendant's evidence is limited to conclusory statements from several RSRs that they engage in direct sales. *See, e.g.*, KohSweeney Declaration, Ex. 9 at ¶ 7 (one RSR explains direct selling but does not quantify how frequently it occurs or how much time is spent on it: "In direct sales, I convince my stores to purchase additional Hershey products from me"). Or defendant submits evidence that RSRs have at times made direct sales. *See, e.g.*, Koh-Sweeney Declaration, Ex. 3 at ¶ 15 (RSR, who has worked for defendant for about ten years, cites two examples of direct

sales he made). Defendant has therefore failed to submit evidence which raises a genuine dispute that direct selling constitutes the plaintiffs' primary duties.

Defendant next contends that RSRs are outside salesmen because they engage in "incremental selling" and "sell through" of Hershey products. Defendant defines these functions, respectively, as "encourag[ing] each customer-store to buy additional product above and beyond any order placed through the CSE" and increasing "the amount of Hershey product[s] sold by a customer-store to its consumers." Opposition at 5. Defendant asserts that this is the primary aspect of the RSR's job. *Id.* But whether the plaintiffs are exempt depends on "actual day-to-day job duties performed by [them] rather than general descriptions or characterizations of job duties." *Reyes v. Texas EZPAWN, L.P.*, 459 F.Supp.2d 546, 553–54 (S.D.Tex.2006) (citing 29 C.F.R. § 541.2).

According to defendant, RSRs who obtain commitments from retailers to replenish Hershey products ("incremental selling") and help retailers market products to increase sales to consumers ("sell through") are "making sales." Defendant contends that it is immaterial when a sale is actually booked, whether the plaintiffs are credited with the sale, or if the plaintiffs receive a commission for the sale. While the FLSA and its regulations do not specifically require these factors to be present for the outside sales exemption to apply, their absence is not the reason for deciding that plaintiffs are not outside salesmen.[13] Rather, the Court concludes

11. Sales include "any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition." 29 U.S.C. § 203(k).

12. The parties agree that plaintiffs meet the second requirement for outside salesmen because they regularly perform their primary

duties outside of defendant's place of business. 29 C.F.R. § 541.500(a)(2).

13. That does not mean these factors are not important. One would think that if employees' primary duties were selling products, their employers would keep track of their sales if the nature of the business permitted it. And courts have remarked on the significant

that defendant did not submit evidence that plaintiffs' primary duties constitute selling under 29 C.F.R. § 541.500(a)(1), particularly because the majority of the time plaintiffs are not the employees who actually sell the product.

The DOL's regulations point out the important distinction between individual sales and company sales:

> (a) Promotion work is one type of activity often performed by persons who make sales, which may or may not be exempt outside sales work, depending upon the circumstances under which it is performed. Promotional work that is actually performed incidental to and in conjunction with an *employee's own outside sales or solicitations is exempt work*. On the other hand, promotional work that is incidental to sales made, or to be made, *by someone else is not exempt* outside sales work ...
>
> (b) A manufacturer's representative, for example, may perform various types of promotional activities such as putting up displays and posters, removing damaged or spoiled stock from the merchant's shelves or rearranging the merchandise. Such an employee can be considered an exempt outside sales employee if the employee's primary duty is making sales or contracts. Promotion activities directed toward consummation of the *employee's own sales are exempt*. Promotional activities designed to stimulate sales that will be made *by someone else are not exempt* outside sales work.

29 C.F.R. § 541.503 (emphasis added). Accordingly, the requirement for sales is not met when employees' efforts are directed "toward stimulating the sales of [their] company generally rather than the consummation of [their] own specific sales." Dep't of Labor, Wage & Hour Div., *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees*, 69 Fed.Reg. 22122, 22162 (Apr. 23, 2004).

Here, defendant has not produced evidence that plaintiffs' primary duties are "making sales" as contemplated by the regulations. Defendant concedes that its upper-level salespeople, such as CSEs, negotiate sale agreements—without any involvement from the RSRs—for the company's products with customers' corporate offices (i.e., Walmart, Safeway, Albertson's, etc.). Shein Declaration at ¶ 5; Smuda Declaration at ¶ 10. That is when the sale is recorded, and Hershey products are later shipped to the retailers. *See* Malloy Declaration, Ex. L. It is undisputed that plaintiffs then help stimulate sales by encouraging retailers to replenish their supply and ensuring that sold products are properly marketed at the retail stores. Smuda Declaration at ¶¶ 10–12. While this facilitates the movement of Hershey products from warehouses and stockrooms to the shelves of retail stores and into the hands of consumers, this does not constitute an additional "sale." The work done by plaintiffs may increase defendant's sales, but it does not affect the plaintiffs' own sales. Since plaintiffs are not the individuals making the actual sale as the exemption requires, this type of "incremental selling" and "sell through," even if

---

role that sales commissions play for outside salesmen. *See Jewel Tea Co. v. Williams,* 118 F.2d 202, 207–08 (10th Cir.1941); *Christopher,* 635 F.3d at 400–01, 2011 WL 489708 at *16 (9th Cir.2011). In any event, the first inquiry under the outside sales exemption is to determine whether the employee's primary duty is to actually make sales. *See Ruggeri v.*

*Boehringer Ingelheim Pharm., Inc.,* 585 F.Supp.2d 254, 270–71 (D.Conn.2008). Because plaintiffs do not primarily make sales, this Court's ruling does not turn on these factors, including the "sales" factors from *Nielsen v. DeVry, Inc.,* 302 F.Supp.2d 747 (W.D.Mich.2003), that defendant argues applies to RSRs. *See* Opposition at 15.

they were the plaintiffs' primary duties, does not amount to exempt work.[14]

The disconnect between what defendant considers to be a sale and what the regulations consider to be a sale is illustrated by one of the examples that defendant cites, exhibit B to the declaration of Steve Wilson. Wilson, a district sales manager, supervises RSRs including plaintiff Michael Bain. Exhibit B is a communication from Bain to Wilson explaining that as Halloween was approaching one of his stores "did not have a candy display . . . all product went to the shelf." Bain therefore convinced the store manager to build a display which "meant that [the store] would be sent a lot of this product." This exhibit supports plaintiffs' characterization of what they do—marketing products that have already been or will be sold by someone else so that products move through the store. This may permit someone else to sell more Hershey products but it does not constitute a direct sale as that term is defined in the regulations.

Defendant points out that RSRs sometimes persuade retailers to order additional products from allotments at warehouses that have not previously been sold by CSEs. Smuda Declaration at ¶ 18. Defendant also repeatedly references a hypothetical sales scenario where a CSE intentionally sells less to a retailer "for the purpose of creating additional RSR selling opportunities at the store level." *See, e.g.,* Shein Declaration at ¶ 6. According to defendant, under both of these methods the RSRs' selling efforts correspond directly with their own sales. But these arguments from defendant are once again misplaced. While these types of sales may happen at times, the critical issue is whether plaintiffs sell in this manner for the majority of the time. Out of all the declarations and depositions submitted by defendant, both from RSRs and defendant's corporate witnesses, defendant has not pointed to any evidence that this type of selling occurs frequently, let alone that it constitutes the primary aspect of plaintiffs' job duties.

The declaration of Thomas Smuda is telling. He is the Vice President of North American Retail and a person in a position to be able to testify that plaintiffs' spend a lot of their time selling products that have not yet been sold by CSEs. But he does not do this. Instead, he first distinguishes "direct selling" from "incremental selling." KohSweeney Declaration, Ex. 1 at ¶ 19–20. He explains that RSRs engage in "direct selling" when there is no CSE assigned to that retailer. *Id.* at ¶ 19. Smuda does not mention how many RSRs and retailers fit into this category and how much of the RSRs' duties are devoted to this task. *Id.* He then explains that when a retailer does have an assigned CSE, RSRs engage in "incremental selling," including "convincing the customer-store to fully participate in upcoming promotions" and "convincing the customer-store to allocate more space to Hershey product[s]." *Id.* at ¶ 20. Smuda does not testify that RSRs' primary "incremental selling" duties include making sales besides those already made by

---

**14.** Because other employees have already made the sale, the plaintiffs are similar to the following example of nonexempt workers:

Another example is a company representative who visits chain stores, arranges the merchandise on shelves, replenishes stock by replacing old with new merchandise, sets up displays and consults with the store manager when inventory runs low, but does not obtain a commitment for additional purchases. The arrangement of merchandise on the shelves or the replenishing of stock is not exempt work unless it is incidental to and *in conjunction with the employee's own outside sales.* Because the employee in this instance does not consummate the sale nor direct efforts toward the consummation of a sale, the work is not exempt outside sales work.

29 C.F.R. § 541.503(c) (emphasis added).

CSEs. *Id.* In a supplemental declaration, Smuda explains that on some occasions RSRs obtain orders for products in warehouses that have not yet been sold by CSEs, and that defendant's sales fell when RSRs were temporarily removed from retailers. Smuda Declaration at ¶¶ 13–18. Again, he does not testify that the RSRs' primary duties involve making their own sales. The best he can muster is to say "it is not accurate to say that RSRs have no role in sales or merchandising plans that originate at Hershey headquarters." *Id.* at ¶ 14. Not having no role in sales is a far cry from making sales as a primary duty. Thus, there remains no material evidence that plaintiffs are primarily engaged in making sales rather than promoting products that have already been sold by CSEs. Without such evidence, there is no genuine dispute that the outside sales exemption does not apply to plaintiffs.

The policy reasons behind the enactment of the FLSA support the finding that plaintiffs' are not primarily engaged in selling. The Tenth Circuit explained:

> The reasons for excluding an outside salesman are fairly apparent. Such salesman [sic], to a great extent, work[ ] individually. There are no restrictions respecting the time he shall work and he can earn as much or as little, within the range of his ability, as his ambition dictates. In lieu of overtime, he ordinarily receives commissions as extra compensation. He works away from his employer's place of business, is not subject to the personal supervision of his employer, and his employer has no way of knowing the number of hours he works per day. To apply hourly standards primarily devised for an employee on a fixed hourly wage is incompatible with the individual character of the work of an outside salesman.

*Jewel Tea Co. v. Williams,* 118 F.2d 202, 207–08 (10th Cir.1941); *see also Christopher,* 635 F.3d at 398, 2011 WL 489708 at \*13. Unlike the salesmen Congress sought to exempt, plaintiffs do not receive commissions. *See supra* footnote 4. They only earn an entry-level salary and a potential targeted bonus of 13% of their salary, which is also not based on their individual sales. *Id.* Consequently, plaintiffs are not rewarded for all the overtime they are required to work. Nor do they earn "as much or as little" as "[their] ambition dictates," a common aspect of the typical salesmen. *See Jewel Tea,* 118 F.2d at 207–08.

Nor can Hershey argue that plaintiffs are not amenable to supervision and having their hours monitored. While working and performing their duties, plaintiffs are required to carry personal digital assistants, called REX devices, that are issued by defendant. *See* Harsh Declaration. Defendant expects plaintiffs to use the REX to record the time they spend at each store. *See id.* at Ex. A. The REX therefore provides defendant with the ability to keep track of the hours worked by plaintiffs. *See also id.* at ¶ 6 ("the REX has a feature which acts as a digital timeclock or timesheet for users to track all hours worked, but this feature has never been activated for RSRs since the rollout of REX in 2004").[15] The hours worked by plaintiffs are also not flexible. Defendant expects plaintiffs to visit stores for a certain number of hours per day and provides them with guidelines for how much time to spend at each type of store. *See* Malloy Declaration, Ex. H at 36; KohSweeney

---

**15.** Defendant already monitors the hours worked by nonexempt Retail Service Merchandisers (RSMs), who perform similar functions as RSRs but on a part-time basis.

*See* Malloy Declaration, Ex. P at 43. This also shows that defendant is capable of overseeing the hours worked by plaintiffs.

Declaration, Ex. 2 at ¶¶ 20–22 (one RSR testified that defendant expects him to (1) start working by 7:00 a.m.; (2) follow defendant's recommendations of how much time to spend at each store; and (3) make about 7.5 hours of sales calls each day). Although plaintiffs may vary their time at each store to some degree, this is not the same as there being "no restrictions respecting the time [they] shall work." *See Jewel Tea*, 118 F.2d at 207–08. Thus, plaintiffs are distinguishable from the outside salesmen that the FLSA intended to be exempt employees.

The *Christopher* decision also does not help Hershey. In *Christopher*, the Ninth Circuit disagreed with the Second Circuit and other courts in holding that pharmaceutical sales representatives (PSRs) are outside salesmen, even though they are not permitted by law to make sales directly to consumers and instead focus their efforts on obtaining commitments from physicians to prescribe their company's medications. 635 F.3d 383, 2011 WL 489708. But the fact-specific rationale of *Christopher* does not apply to plaintiffs, who are not prohibited from selling Hershey products directly to stores.[16] *See id.* at 396, at *12 ("In most industries, there are no firm legal barriers that prohibit the actual physical exchange of the goods offered for sale. Because such barriers do exist in this industry, the fact that commitments are non-binding is irrelevant . . .").[17]

*Christopher*, like this Court, found the *Jewel Tea* factors instructive as well. *See id.* at 397, at *13. Although defendant is correct that plaintiffs' job duties have some similarities to those of PSRs and the plaintiffs in Jewel Tea (i.e., working in assigned territories, not making deliveries, completing clerical duties at the end of the day, etc.), two important *Jewel Tea* factors that *Christopher* turned on are not present in this case. These factors were cited in *Christopher* at the conclusion of the opinion:

> PSRs are driven by their own ambition and rewarded with commissions when their efforts generate new sales. They receive their commissions in lieu of overtime and enjoy a largely autonomous work-life outside of an office.

635 F.3d at 400-01, 2011 WL 489708 at *16. As explained earlier, plaintiffs' overtime work is not compensated by any commissions they receive.[18] And while plaintiffs work outside of their office, they are more restricted than PSRs.

For the foregoing reasons—and consistent with the rule that exemptions are limited to those employees "plainly and unmistakably" within the exemptions' "terms and spirit"—the outside sales exemption does not apply to plaintiffs. *See Christopher*, 635 F.3d at 391, 2011 WL 489708 at *7. Accordingly, plaintiffs' motion for partial summary judgment is granted on the outside sales exemption.

**16.** *Christopher* recognized that an employee's classification status requires a "multi-factor review of an employee's functions." 635 F.3d at 400, 2011 WL 489708 at *15.

**17.** In this case, plaintiffs do have the capability to sell defendant's products directly to retailers. Instead of doing this, they chiefly promote products other Hershey employees have sold.

**18.** It is important to note that the PSRs in *Christopher* made around $75,000 per year,

with more than 25% of their salary coming from incentives. 635 F.3d at 387-88, 2011 WL 489708 at *3, footnote 4 (highlighting that one plaintiff's incentives over three years consisted of 41%, 32%, and 37% of his gross salary). Defendant, on the other hand, only pays plaintiffs a bonus targeted at 13% of their salary. *See supra* footnote 4. The only example in the record of a bonus payment shows that a plaintiff received 2.8% of her salary during the first half of the 2009 calendar year. *Id.*

## B. Administrative Exemption

 Plaintiffs have also met their ultimate burden of persuasion that there is no genuine dispute regarding the administrative exemption applying to them. To be considered administrative employees, plaintiffs' primary duties must include: (1) nonmanual work "directly related to the management or general business operations of the employer or the employer's customers," and (2) the exercise of "discretion and independent judgment" with respect to "matters of significance." 29 C.F.R. 541.200(a).[19] This is a two-part inquiry that examines the type of work performed by employees as well as the level or nature of that work. *Defining and Delimiting the Exemptions, supra* at 22144.

The parties dispute the amount of nonmanual work performed by plaintiffs and the discretion they exercise. Plaintiffs present evidence that they are required to perform substantial physical tasks as part of their daily merchandising efforts, such as building promotional displays and carrying as well as opening boxes to restock Hershey products. Defendant contends that this is only true for a minority of plaintiffs; the majority are primarily engaged in nonmanual work because they ensure that the retailers' employees perform the necessary merchandising duties. Likewise, the parties dispute whether the REX is used for supervision and whether certain "RSR guidelines" that defendant developed are meant to be followed, as plaintiffs contend, or are meant to be deviated from, as defendant contends. The contradictory testimony on these issues results in genuine disputes over the amount of nonmanual work performed by plaintiffs and the amount of supervision they receive. But these disputes are immaterial to a determination whether the administra-

tive exemption applies since defendants have not presented evidence to raise a triable issue under the last part of the exemption's second requirement.

This second requirement is not satisfied because defendants do not present evidence that plaintiffs exercise discretion with respect to "matters of significance." The regulations explain that "matters of significance" refers to the level of importance of the work at issue or the consequence of that work. 29 C.F.R. § 541.202(a); *see also Defining and Delimiting the Exemptions, supra* at 22143 ("the work performed by an exempt administrative employee must be significant, substantial, important or of consequence"). This is an element that is critical for the exemption to apply. *See Defining and Delimiting the Exemptions, supra* at 22144; *see also Christopher*, 635 F.3d at 391, 2011 WL 489708 at *7 ("Because exemptions are 'narrowly construed' against the employer, to meet its burden, an employer must establish that the employee satisfies each of the criteria set forth in the [DOL's] regulations").

Under the undisputed facts, plaintiffs' job duties do not rise to the level of importance necessary for them to be exempt employees. A list of non-exclusive factors to consider when evaluating the administrative exemption is provided by the DOL:

(1) whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices;

(2) whether the employee carries out major assignments in conducting the operations of the business;

(3) whether the employee performs work that affects business operations to a substantial degree, even if the

---

**19.** The parties agree that plaintiffs meet the first requirement for administrative employ-

ees because they earn more than $455 per week. 29 C.F.R. § 541.200(a)(1).

employee's assignments are related to operation of a particular segment of the business;

(4) whether the employee has authority to commit the employer in matters that have significant financial impact;

(5) whether the employee has authority to waive or deviate from established policies and procedures without prior approval;

(6) whether the employee has authority to negotiate and bind the company on significant matters;

(7) whether the employee provides consultation or expert advice to management;

(8) whether the employee is involved in planning long—or short—term business objectives;

(9) whether the employee investigates and resolves matters of significance on behalf of management; and;

(10) whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(a). Plaintiffs have presented deposition testimony that many of these factors do not apply to their job duties as RSRs. Plaintiffs have testified that (1) they have no authority to negotiate or commit defendant to matters that have a significant financial impact (*see, e.g.,* Malloy Declaration, Ex. T at 42; Ex. N at 11) (2) they can not deviate from defendant's established policies and procedures without getting permission from their supervisors (*see, e.g.,* Malloy Declaration, Ex. T at 42; Ex. N at 11); and (3) they do not carry out major assignments in conducting the operations of the business (*see, e.g.,* Malloy Declaration, Ex. T at 41; Ex. S at

77). Nor do they design advertisements or decide when to reduce prices to stimulate sales, factors deemed important by both the Ninth Circuit in *Christopher,* 635 F.3d at 398-99, 2011 WL 489708 at *14, and the Second Circuit in *Reiseck v. Universal Communications of Miami, Inc.,* 591 F.3d 101, 107 (2d Cir.2010). In fact, it is undisputed that plaintiffs lack the capacity to change prices or negotiate discounts. *See* Joint Statement of Undisputed Facts ¶¶ 5–6.

Defendant's opposition did not specifically address any of these factors. More importantly, defendant has not pointed to any evidence that demonstrates that plaintiffs' primary duties as RSRs are related to matters of significance. As an example of the discretion that RSRs exercise, defendant submits evidence that RSRs have flexibility regarding the order in which they visit their retailers, the amount of time they spend at their retailers, and the method and manner of their presentations to the retailers. Opposition at 19–20. Even accepting these as true, the Court finds that deciding the order of stores to visit, how much time to spend in a store, or which of the sales tools defendant provides to use are not matters of sufficient significance to trigger the administrative exemption. *See Clark v. J.M. Benson Co., Inc.,* 789 F.2d 282, 287–88 (4th Cir.1986)("The regulations recognize that almost every employee exercises some discretion, as for example in selecting the order in which to perform different duties. To demonstrate administrative status, however, the discretion and independent judgment exercised must be real and substantial, that is, they must be exercised with respect to matters of consequence") (internal quotations and citations omitted). Defendant does not point to any other primary duties performed by plaintiffs that would rise to the level of importance required by the exemption.[20]

**20.** At the hearing, defendant contended that plaintiffs are administrative employees be-

cause they are similar to the PSRs who have

Based on the above, there is no genuine dispute that plaintiffs do not work on matters of significance. Accordingly, they do not meet the requirements for administrative employees.

### C. Combination Exemption

■ In its opposition, defendant argues, for the first time,[21] that plaintiffs are exempt employees because they satisfy the requirements for the combination exemption. This exemption allows employees to be classified as exempt if they perform a combination of outside sales and administrative duties, but their primary duty does not fit neatly into either exemption.[22] 29 C.F.R. § 541.708; *see also IntraComm, Inc. v. Bajaj*, 492 F.3d 285, 294 (4th Cir. 2007) (the exemption is "a mechanism for cobbling together different exempt duties for purposes of meeting the primary-duty test"). Employers, however, cannot "tack various nonexempt duties and hope to create an exemption." *Dalheim v. KDFW–TV*, 918 F.2d 1220, 1232 (5th Cir.1990).

This combination exemption does not save defendant. As explained earlier, defendant has not shown there is a genuine dispute regarding the outside sales or administrative exemptions applying to the plaintiffs. Defendant has not submitted evidence that plaintiffs satisfy the administrative exemption's prerequisite of primarily working on matters of significance.

The plaintiffs' primary duties with respect to the outside sales exemption are also not exempt duties. Defendant has not presented specific evidence that plaintiffs primarily performed any combination of exempt duties to satisfy the combination exemption.

### IV. CONCLUSION

The FLSA's legislative history corroborates the Court's decision, based on this record, that plaintiffs do not perform exempt duties:

> the exemptions were premised on the belief that the workers exempted typically earned salaries well above the minimum wage, and they were presumed to enjoy other compensatory privileges such as above average fringe benefits and better opportunities for advancement, setting them apart from the nonexempt workers entitled to overtime pay. Further, the type of work they performed was difficult to standardize to any time frame and could not be easily spread to other workers after 40 hours in a week, making compliance with the overtime provisions difficult and generally precluding the potential job expansion intended by the FLSA's time-and-a-half overtime premium.

*See Defining and Delimiting the Exemptions, supra* at 22123–24. These factors

been considered exempt employees by other courts. *See Schaefer–LaRose v. Eli Lilly and Co.*, 663 F.Supp.2d 674, 693 (S.D.Ind.2009) (explaining that PSRs exercise discretion on matters of significance because generating prescriptions is key to the overall success of defendant's business). Defendant's argument fails for the same reasons that *Christopher* does not govern this case: there is a fundamental difference between PSRs and RSRs, particularly the importance of their job duties. PSRs are a vital component in persuading physicians to prescribe medications, the crux of the pharmaceutical company's business. Plaintiffs, on the other hand, are

entry-level employees that mainly assist retailers in selling more products that have already been purchased.

**21.** As part of its affirmative defenses in its answer, defendant specifically pled that the plaintiffs were exempt from overtime compensation due to the outside sales and administrative exemptions, but not the combination exemption. Docket No. 85 at 31.

**22.** California appears to recognize a similar "combination" exemption. *See* Cal. Div. of Labor Standards Enforcement Opinion Letter at 5 (May 23, 2003).

do not apply to the plaintiffs' duties as RSRs. Plaintiffs are entry-level employees that do not enjoy "compensatory privileges" that would set them apart from nonexempt workers who receive pay for their overtime. Particularly troubling, defendant classifies plaintiffs as outside salesmen, but does not record their sales even though it has the capability to do so. Lastly, the work performed by RSRs is not difficult for the defendant to standardize into general terms, as defendant already does when providing plaintiffs with guidelines regarding model call procedures. *See* Malloy Declaration, Ex. H at 36; KohSweeney Declaration, Ex. 2 at ¶¶ 20–22. Using these standardized procedures, defendant has the capability to eliminate overtime work or spread it to other employees, such as RSMs.

As the Ninth Circuit cautioned in *Christopher*, exemptions can only apply to persons 'plainly and unmistakably within [the exemption's] terms and spirit.' 635 F.3d at 391, 2011 WL 489708 at *7. Construed narrowly against defendant, these plaintiffs are plainly not exempt. Unlike the PSRs in *Christopher*, plaintiffs do not work in a heavily regulated industry where they are prohibited from making sales. What prohibits plaintiffs from having as their primary duty outside sales or significant administrative tasks is defendant, which chose to assign these tasks to others. Defendant does have employees, such as CSEs, who appear to qualify for exempt status. Unlike PSRs who interact with doctors and discuss with them scientific information and medical research, including information about product benefits and risks, dosage instructions and the types of patients for which certain products should be prescribed, plaintiffs talk to store managers about increasing the movement of candy bars and other Hershey products. Unlike PSRs who earn about $75,000 a year, of which incentive compensation ranged from 26% to 41% of the PSRs'

salary, plaintiffs generally earn less than $50,000 a year with much smaller bonuses. *See Christopher*, 2011 WL 489708 at footnote 4. And while the nature of some of the PSR duties, such as attending conventions on weekends, might not lend themselves to a 40 hour week, defendant has not presented any evidence why plaintiffs could not perform their jobs in 40 hours if defendant's guidelines and procedures were altered to permit them during the workday, to check their e-mail, synchronize their REX, review product bulletins and do the other tasks which they testify they now do on evenings or weekends.

The issue before the Court is not whether defendant's sales strategy is successful but whether it can execute that strategy without paying plaintiffs, one component of that strategy, overtime. For the reasons stated above, the letter and the spirit of the FLSA require that plaintiffs be paid overtime. Plaintiffs' motion for partial summary judgment is therefore **GRANTED** in its entirety.