# United States Court of Appeals
## For the First Circuit

No. 22-1070

MARTIN J. WALSH, Secretary of Labor,
UNITED STATES DEPARTMENT OF LABOR,

Plaintiff, Appellant,

v.

UNITIL SERVICE CORPORATION,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Landya B. McCafferty, U.S. District Judge]

Before

Gelpí, Selya, and Thompson,
Circuit Judges.

Dean A. Romhilt, Senior Attorney, United States Department of
Labor, with whom Seema Nanda, Solicitor of Labor, Jennifer S.
Brand, Associate Solicitor, and Rachel Goldberg, Counsel for
Appellate Litigation, were on brief, for appellant.
William D. Pandolph, with whom Sulloway & Hollis, P.L.L.C.
was on brief, for appellee.

March 22, 2023

**GELPÍ**, **Circuit Judge**. Compliance with the Fair Labor Standards Act's ("FLSA") overtime pay requirements is critical to ensuring worker protections. Before us, Appellant, the Department of Labor ("DOL"), seeks overtime compensation under the FLSA for hours worked in excess of forty hours per week for two categories of employees -- Dispatchers and Controllers -- employed by Appellee, Unitil Service Corporation ("Unitil Service"). Unitil Service argues that these workers are exempt "administrative" employees under federal law and as such are not entitled to overtime payments. The district court found that the employees' "primary duty" was "directly related" to the general business operations of Unitil Service's customers and concluded that the employees were "administrative," exempt from the FLSA, and thus not entitled to overtime pay. Summary judgment was granted in favor of Unitil Service. The DOL filed a timely appeal. For the following reasons, we vacate the grant of summary judgment and remand to the district court for further proceedings consistent with this opinion.

## I. Background

Unitil Service is a New Hampshire corporation and wholly-owned subsidiary of Unitil Corporation ("Unitil Corporation"), a public utility holding company that owns local and regional utility companies providing gas and/or electricity to approximately 200,000 residential, commercial, and industrial

customers in New England. Unitil Corporation and its subsidiaries do not own power plants, generate electricity, or produce any natural gas themselves. Unitil Service provides "administrative and professional services on a centralized basis" to Unitil Service subsidiaries ("Distribution Operating Companies" or "DOCs"), "including regulatory, financial, accounting, human resources, engineering, operations, technology, energy management and management services." More specifically, Unitil Service operates, monitors, and controls the electrical grid and gas pipelines that distribute electricity and gas to the DOCs' end-user customers. This includes operating centralized electric and gas control rooms staffed by the Electric Distribution Dispatchers ("Dispatchers") and Gas Controllers ("Controllers") at issue here.

### a. Duties of Dispatchers

Dispatchers are employed by Unitil Service in a centralized work area known as Central Electric Dispatch. According to Unitil Service's general position description, their duties include:

> Provid[ing] 24/7 monitoring and control of the electric transmission and distribution systems for all [DOCs]; provid[ing] outage management response and reporting for all electric [DOCs]; and perform[ing] tasks associated with compliance with regulatory requirements including but not limited to NERC (National Energy Regulatory Commission), MDPU (Massachusetts Department of Public Utilities), NHPUC (New Hampshire Public Utilities Commission) that would include

- 3 -

reporting, emergency response, notifications and questions regarding the electric systems. Monitor[ing] electric [software alarm] systems and tak[ing] necessary actions to respond to current system conditions.

In total, approximately 60% of a Dispatcher's time is spent "perform[ing] monitoring and control of electric systems and emergency response"; 15% in "communications and notifications"; and 25% in "regulatory reporting compliance" and "documentation."

## b. Duties of Controllers

Controllers are employed by Unitil Service in a similar capacity but for gas DOCs. Their position description reads:

This position has primary oversight responsib[ility] for the operation and control of the Company's gas transmission distribution system; and the managing of pipeline and peak shaving supplies. The incumbent must ensure that the system is operated within the constraints of Federal, State and Company codes and standards as well tariff constraints for the receipt and control of the system supply. This position also provides training and daily guidance to subordinate Gas Controllers and Field Services Coordinator[s].

As a result, approximately 60% of a Controller's time is spent monitoring and controlling gas pipeline systems, supporting "processes related to market requirements" for DOCs, and providing "general control, confirmation, scheduling, balancing and live gas operations"; 30% interpreting, organizing, and executing complex assignments, assisting with training and coordination of work for subordinate Controllers, estimating personnel needs, scheduling

- 4 -

and assigning work, and managing complex projects; and 10% serving as "[b]ack up to [the] Field Services Coordinator as needed."

Generally speaking, both Dispatchers and Controllers monitor their respective systems for automated alerts or other developments and respond accordingly to keep electricity or gas flowing safely.[1]  While they do not actively control the flow of electricity or gas, they do determine whether alerts warrant responses such as shutting off or re-routing the flow of gas or electricity, dispatching service crews, or communicating with local authorities and other divisions within the company.  Each role has a manual that covers standard responses to most situations, and each role has supervisors who are available to address major issues.  Both Dispatchers and Controllers can respond independently to some situations and deviate from certain procedures, although the extent of their decision-making authority and the frequency with which situations require this purported exercise of discretion are points of dispute.  Both groups reported working, on occasion, substantially over forty hours per week.

## II. Procedural History

Following a DOL investigation into the Dispatchers' and Controllers' work, the DOL filed suit in the District Court for

---

[1] We note that we group Dispatchers and Controllers here because the nature of their work is similar save for one monitoring gas and the other electricity.

the District of New Hampshire against Unitil Service alleging violation of the FLSA's requirement that employees be paid overtime unless they are exempt. 29 U.S.C. §§ 206-207, 213. Each party submitted a motion for summary judgment and the district court -- applying the summary judgment standard -- concluded that Dispatchers and Controllers are exempt from overtime requirements because they are "administrative" employees under the FLSA. U.S. Dep't of Lab. v. Unitil Serv. Corp., 573 F. Supp. 3d 566, 580 (D.N.H. 2021). This appeal followed.

## III. Discussion

On appeal, the DOL argues that Dispatchers and Controllers do not satisfy the FLSA's administrative exemption and thus are entitled to overtime pay. More specifically, the DOL argues that the district court did not properly evaluate the job duties of both categories of workers under the second prong of the administrative exemption of the FLSA's regulations, discussed infra.[2] Rather than relying on and analogizing to the relevant regulation's list of functional areas that can be (but are not necessarily) administrative, as the district court did, see id. at 578, 580 (relying on 29 C.F.R. § 541.201(b)), the DOL posits that

---

[2] The DOL also argues that the district court misapplied the third prong of the administrative exemption test -- the requirement that an employee's "primary duty include[] the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3).

the district court should have instead engaged in a "relational" analysis to assess whether the Dispatchers' and Controllers' primary duties are "directly related to the management or general business operations" of either their employer (Unitil Service) or their employer's customers (the DOCs), 29 C.F.R. § 541.200(a)(2). We agree, acknowledge that our circuit's precedent on this issue is limited, commend the district court for attempting to parse out our limited jurisprudence, clarify the application of the "relational" analysis test, vacate the grant of summary judgment for Unitil Service, and remand to the district court to apply the test we now outline.

### a. Standard of Review

This case comes before us at the summary judgment stage. Thus, we review the issues de novo and draw all reasonable inferences in favor of the nonmovant -- here, the DOL. Cash v. Cycle Craft Co., 508 F.3d 680, 682 (1st Cir. 2007). "Summary judgment is appropriate only when the record 'show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(c)).

### b. The FLSA

The FLSA requires that covered employers pay certain employees an overtime premium "at a rate not less than one and one-half times the regular rate at which [they are] employed."

29 U.S.C. § 207(a). Employees "in a bona fide executive, administrative, or professional capacity[,] . . . as such terms are defined and delimited from time to time by regulations of the Secretary," however, are exempt from these provisions, and thus not entitled to overtime payment. Id. § 213(a)(1) (emphasis added). The Secretary's regulations define those working in an "administrative" capacity to include those employees:

> (1) Compensated on a salary or fee basis pursuant to § 541.600 at a rate of not less than $684 per week . . . exclusive of board, lodging or other facilities;
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200. Thus, to fall under the exemption, each of the three prongs must be satisfied and the employer bears the burden of establishing each prong. See Reich v. John Alden Life Ins. Co., 126 F.3d 1, 7-8 (1st Cir. 1997). The DOL has promulgated additional regulations that define certain of the terms in the second and third prongs. See, e.g., 29 C.F.R. §§ 541.201-202; 541.700. The regulations also describe relevant factors to consider in determining whether those same prongs are satisfied. Id. §§ 541.201-202. And the regulations further include a list of hypothetical employees (with corresponding hypothetical job

- 8 -

descriptions) meant to illustrate circumstances in which an employee may or may not qualify for the administrative exemption. Id. § 541.203.

Before us, the parties do not dispute that the first prong -- the sufficient compensation requirement -- is met. Instead, the dispute turns on whether the remaining two prongs were satisfied. Because we vacate on the second prong, see id. § 541.200(a)(2), we do not address the third prong -- the discretion-and-independent-judgment prong.

**c. The Second Prong**

For present purposes, whether both classes of employees can be properly characterized as "administrative" employees -- and thus exempt from overtime payment -- turns on whether their "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers." Id. (emphases added).

Certain of the terms used in 29 C.F.R. § 541.200(a)(2) are defined and explained in other sections of the DOL's regulations. "Primary duty" is defined to mean "the principal, main, major or most important duty that the employee performs," and generally means that the employee spends at least 50% of his or her time performing the duty. Id. § 541.700. And although the regulations do not define the phrase "directly related to the

- 9 -

management or general business operations," they do make clear that the phrase "refers to the type of work performed by the employee." Id. § 541.201(a). They also make clear that an employee will qualify as "administrative" under the second prong only if he or she "perform[s] work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." Id. (emphasis added). And separately, the regulations state that "[w]ork directly related to management or general business operations" can include, "but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations[;] government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities." Id. § 541.201(b) (outlining a non-exhaustive list of examples of "[w]ork directly related to management or general business operations").

Our jurisprudence interpreting and applying the second prong is limited. We clarify here, however, that the analysis is indeed -- as described by the DOL -- a "relational" one. At bottom, the analysis asks whether the employee's primary duty is

"directly related" to the "management or general business operations of the employer." Id. § 541.200(a)(2). It is thus necessary to clearly identify the primary duty of the employee(s) in question, and to determine whether that duty is directly related to "running or servicing of the business." Id. § 541.201(a).

Our precedents and those from other circuits illustrate that, in conducting this analysis, it is often useful to identify and articulate the business purpose of the employer and (if necessary) the employer's customers. By "business purpose" we mean the production or provision of "the very product or service that the" employer or its customers "offers to the public." John Alden, 126 F.3d at 9; see Bigger v. Facebook, Inc., 947 F.3d 1043, 1053 (7th Cir. 2020) (referring to same concept as "the enterprise's core function" or "central revenue generator"); Dewan v. M-I, L.L.C., 858 F.3d 331, 336 (5th Cir. 2017) (referring to "the commodity or commodities, whether goods or services, that the enterprise exists to produce and market" (quoting Dalheim v. KDFW-TV, 918 F.2d 1220, 1230 (5th Cir. 1990))); Bothell v. Phase Metrics, Inc., 299 F.3d 1120, 1127 (9th Cir. 2002) (referring to "the goods and services which constitute the business' marketplace offerings"). Having done so, one may then compare the employee's primary duty to the business purpose of the employer and/or the employer's customers to determine whether the employee's primary duty directly relates to the business purpose or, conversely, is

- 11 -

directly related to the "running or servicing of the business."
29 C.F.R. § 541.201(a).

Put slightly differently, the "relational" analysis considers whether an employee's primary duties are "ancillary" to the business's "principal production activity" or "principal function." See John Alden, 126 F.3d at 10; Hines v. State Room, Inc., 665 F.3d 235, 242 (1st Cir. 2011) (considering whether the employees' duty was ancillary to the business's "principal function"); Cash, 508 F.3d at 684-86 (not mentioning "ancillary" test but evaluating relationship between employee duties and business purposes). John Alden provides a clear example of this mode of analysis. There, we concluded that "the activities of the marketing representatives [at issue] [we]re clearly ancillary to John Alden's principal production activity -- the creation of insurance policies -- and therefore could be considered administrative 'servicing' within the meaning of" an earlier version of the regulation at issue. John Alden, 126 F.3d at 10 (likening marketing representatives' activities to "'representing the company' and 'promoting sales'" -- examples of "exempt administrative work").

This analytical framework has its roots in what has sometimes been referred to as the "administrative-production dichotomy." See id. at 9-10. That dichotomy can be useful in assessing whether the second prong of the administrative exemption

has been satisfied, but the dichotomy itself is not dispositive and should be employed "only to the extent it clarifies the" broader question of whether an employee's work is directly related to the running or servicing of the business. Bothell, 299 F.3d at 1127; see Calderon v. GEICO Gen. Ins. Co., 809 F.3d 111, 123 (4th Cir. 2015) (explaining "that while production-type work is not administrative, not all non-production-type work is administrative" (emphases in original)); see also Schaefer v. Ind. Mich. Power Co., 358 F.3d 394, 402-03 (6th Cir. 2004); Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22122, 22141 (April 23, 2004) (codified at 29 C.F.R. pt. 541).

### i. Dispatchers and Controllers

Having explained the "relational" analysis test, we now turn to the case of Dispatchers and Controllers. As an initial matter, we note that areas like the energy sector -- where power is the product, but transmission and certain other services are inextricably linked -- and separately incorporated services corporations (common in industries like healthcare, insurance, and utilities) can create confusion on how to apply this analysis.

Turning to the facts before us, we ask whether Unitil Service has conclusively shown that the Dispatchers' and Controllers' primary duties are "directly related to the management or general business operations of" either Unitil

- 13 -

Service (the employer) or the DOCs (the employer's customers). See 29 C.F.R. § 541.200(a)(2). If the Dispatchers' and Controllers' primary duties relate to Unitil Service's business purpose, in that they produce the product or provide the service that the company is in business to provide, the second prong is not satisfied. Id.

We divide our inquiry into two parts. To begin, we first assess whether the Dispatchers' and Controllers' primary duties directly relate to the management or general business operations of Unitil Service. The district court found that the primary duties of the Dispatchers and Controllers are to provide the very services that Unitil Service is in the business of providing. The district court's finding in this regard is unassailable. Unitil Service's is in the business of providing operational and administrative services to its subsidiaries. The primary duties of the Dispatchers and Controllers are to provide these various services -- to operate and monitor their respective electrical grids and gas pipelines for the DOCs -- and thus are the very services that Unitil Service is in business to provide. Because the Dispatchers' and Controllers' primary duties relate to Unitil Service's business purpose, their work for Unitil Service -- at least when considered in direct relation to Unitil Service's business purpose -- does not satisfy the second prong. Consequently, the only way Unitil Service -- which bears the

- 14 -

burden of establishing that an employee falls under the FLSA's "administrative" exemption -- can satisfy the second prong is to show that the Dispatchers' and Controllers' primary duties are directly related to the management or general business operations of the DOCs (the employer's customers).

To determine whether Unitil Service can satisfy the second prong in this regard, we turn to whether the Dispatchers' and Controllers' primary duties relate to the "running or servicing" of the DOCs. The district court assessed this question, but it did not do so through the lens of the "relational" analysis. In other words, the court did not compare the primary duties of the Dispatchers and Controllers to the DOCs' business purposes to determine whether the employees' duties are directly related to the DOCs' business purposes as opposed to general business operations. Instead, the district court looked to the list of functional areas in Section 541.201(b) that can be, but are not necessarily, administrative depending on the duties of the employees. Unitil Serv. Corp., 573 F. Supp. 3d at 578. The court concluded that, because the Dispatchers' and Controllers' primary duties were analogous to the functional areas of "regulatory compliance," "quality control," and "health and safety," their work satisfied the requirements of the second prong. Id.; see also 29 C.F.R. § 541.201(b) (listing examples of the functional areas related to "management or general business operations").

- 15 -

But simply analogizing the Dispatchers' and Controllers' duties to the functional areas outlined in 29 C.F.R. § 541.201(b) was insufficient. As the DOL points out, although the position description for Dispatchers includes "tasks associated with compliance with regulatory requirements," the record, including the "principal accountabilities" section of the job description, does not indicate that either Dispatchers or Controllers do anything beyond engaging in their daily operational duties "within the limits of the applicable Federal, State and Company codes and standards." The same is true for engaging in work subject to certain compliance and safety standards. Further, neither Dispatchers nor Controllers play a role in testing or evaluating the DOCs' distribution or pipeline systems outside of the day-to-day monitoring of these systems. Dispatchers and Controllers do not design or plan the systems, nor do they analyze how they work or how they can be improved. See Renfro v. Indiana Michigan Power Co., 370 F.3d 512, 518 (6th Cir. 2004) (finding that because the "planners" at issue "creat[ed] plans for maintaining equipment and systems in the nuclear plant," their work was "ancillary" to the power company's "principal production activity of generating electricity"). Accordingly, while analogizing to the functional areas may be useful in some cases, here, these analogies fail to capture all that is encompassed by the "relational" analysis.

Moreover, Unitil Service's organizational makeup reveals that the company has entirely separate departments for the very functional areas outlined above. These include departments for "Business Continuity & Compliance" (employing a number of health and safety compliance specialists), "Financial Services" (employing auditors and lawyers), and "Regulatory Services" (employing regulatory analysts). That the Dispatchers' and Controllers' duties may, in a limited or superficial way implicate health, safety, and quality control tasks, does not mean that this was their "primary duty."

Unitil Service would have us look to an unpublished case on which the district court relied, Zelenika v. Commonwealth Edison Co., No. 09 C 2946, 2012 WL 3005375 (N.D. Ill. July 23, 2012). Zelenika involved "dispatchers" whose job was to "monitor [an electric utility's] power distribution system, oversee service to the system, and respond to customer complaints and power outages." Id. at *2. The court determined that the employer satisfied the second prong by analogizing to the functional areas in Section 541.201(b) rather than engaging in a "relational" analysis between the primary duty of the role and the business of the utility. See id. at *13. However, as discussed supra, it is not enough to look only at the list of job functions under Section 541.201(b). Courts must also consider whether the employee's primary duty is contributing to the "running or servicing of the business."

## IV. Conclusion

Accordingly, because the district court did not apply a "relational" analysis comparing the business purpose of Unitil Service and/or its customers to the primary duty of the Dispatchers and Controllers, it was improvident to grant summary judgment to Unitil Service. Unitil Service has not demonstrated that the Dispatchers' and Controllers' primary duty consists of work "directly related to the management or general business operations" of its customers such that the employees fall under the second prong of 29 C.F.R. § 541.200. We leave it to the trier of fact to apply the "relational" analysis required by the second prong of the test. At this stage, genuine issues of material fact remain unresolved. Accordingly, we vacate the decision of the district court granting summary judgment to Unitil Service and remand for further proceedings consistent with this opinion. No costs are awarded.