# United States Court of Appeals
## For the First Circuit

No. 23-1793

JULIE A. SU, Acting Secretary of Labor,
United States Department of Labor,

Plaintiff, Appellee,

v.

F.W. WEBB COMPANY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Angel Kelley, U.S. District Judge]

Before

Barron, Chief Judge,
Selya and Kayatta, Circuit Judges.

Rachel Cowen, with whom James M. Nicholas, Henry Leaman, and
McDermott Will & Emery LLP were on brief, for appellant.

Joseph E. Abboud, Attorney, U.S. Department of Labor, Office
of the Solicitor, with whom Seema Nanda, Solicitor of Labor,
Jennifer S. Brand, Associate Solicitor, and Rachel Goldberg,
Counsel for Appellate Litigation, were on brief, for appellee.

August 1, 2024

**KAYATTA**, **Circuit Judge**. The Acting Secretary of Labor brought this action against F.W. Webb Company ("Webb"), an industrial product wholesaler, alleging that Webb misclassified its Inside Sales Representatives ("ISRs") as exempt administrative employees in violation of the Fair Labor Standards Act's overtime and recordkeeping requirements. The district court granted judgment to the Secretary on both claims, finding that the ISRs did not qualify for the exemption because their "primary duty" is not "directly related to the management or general business operations" of Webb or its customers. See 29 C.F.R. § 541.200(a)(2). For the following reasons, we are unpersuaded by Webb's appeal from that judgment.

## I.

### A.

Webb is a wholesale distributor of engineering and construction products including plumbing, heating, cooling, and PVF (pipes, valves, and fittings) equipment and fixtures. Webb's principal business is to make "wholesale sales of those products to contractors in various industries, government organizations, institutions such as universities and hospitals, industrial buyers, and other customers who work in construction, building maintenance, and infrastructure." Su v. F.W. Webb Co., 677 F. Supp. 3d 7, 11–12 (D. Mass. 2023). Webb generates its revenue from three categories of employees "who directly sell the products

to customers": ISRs, outside salespersons, and counter salespersons. Id. at 12.

Webb's principal office is in Bedford, Massachusetts, but it also operates more than a hundred storefront locations across nine states in New England and the mid-Atlantic. Id. During the relevant period of the Secretary's investigation, Webb employed over 600 ISRs across those nine states. Id. Webb employs far more ISRs than it does outside or counter salespersons, which number around 300-350 and 100 respectively. During the period in question, Webb classified all of its ISRs as administrative employees exempt from the Fair Labor Standards Act's ("FLSA") overtime requirements, and at least some ISRs worked over forty hours during some workweeks without receiving FLSA overtime premiums. Id.

It is uncontested that Webb generates revenue from its ISRs though the sales transactions they complete with customers. Id. It is also uncontested that the ISRs directly interact with customers throughout the sales process, from a customer's initial contact to the delivery of purchased products. Id. In the interim, ISRs work with the customer to "figure out what the right product or products [are]." ISRs specialize in various product areas, but Webb considers all its ISRs to have the same position and basic duties. Id. ISRs report to the general manager supervising the store at which they work, but at some stores they

may also report to an "inside sales manager." Id.  ISRs themselves do not have management duties over other employees.

A representative March 2019 job description posted by Webb stated that ISRs "will work cooperatively with . . . other members of the sales team to grow existing customers, to create new customers and meet or exceed monthly sales quotas at the appropriate gross margin while increasing customer satisfaction." Specific job responsibilities are listed as follows:  processes and maintains customers' orders; creates transfers between various Webb locations to fulfill customer orders; attains specialty material through the use of purchase orders; recommends, sources, and prices bids for customers; makes pricing decisions on orders/bids to maintain competitiveness in the marketplace; follows up on long lead time purchase orders, keeping customers informed of any changes; effectively handles customer-service issues; schedules and manages customer deliveries; produces bids for customer approval; manages credits to Webb standards; and additional duties as assigned.  Id.

Unlike Webb's counter salespersons, who primarily provide quotes and conduct simple over-the-counter sales transactions in stores, ISRs spend only a minority of their time providing readymade quotes to customers from a specified parts list.  Id. at 12-13.  Counter salespersons primarily service customers who physically visit a Webb storefront location to

purchase a specified product, such as "small equipment pieces, fittings, [and] valves."  By contrast, while ISRs also complete similar kinds of transactions to those performed by counter salespersons, they principally interact with customers over phone and email -- and often on more significant projects.  Also unlike counter salespersons, ISRs have discretion and authority to deviate from Webb's pricing matrix when dealing with customers. Id. at 13.

Webb expects its ISRs to "possess the knowledge and expertise in their respective [product] areas in order to advise their customers on the best solutions for their needs."  Id. Principally, this involves working with the customer, who might not know which specific part or item they require, to identify the specific item that best meets their goals.  Id.  Often a customer will provide an ISR with specifications for a project -- such as in connection with the customer's preparation of a bid in response to a request for proposal -- and ask the ISR to provide quotes for all the products needed to meet those specifications, based on Webb's inventory and items the ISR can source.  Id.  Accordingly, several ISRs aver that they spend a majority of their time "advising" or "consulting" customers on the best solutions for their projects, a process which often culminates in the customer making one or more purchases.  As Webb's COO acknowledges, "[t]he end game is completing the sale[.]"  Webb does not charge customers

consulting fees for ISRs' time spent guiding them toward specific products for their project or bid.

Webb admits that it hopes its ISRs' interactions with customers lead to a sale. But regardless of the outcome, Webb views ISRs' services as "important to maintaining the pipeline of transactions in the future" by promoting customer relationships. As Webb explains, "[e]nsuring that the customers are satisfied and will return to Webb for their [respective] needs is an integral part of [an ISR's] duties." To that end, ISRs act as "Webb's eyes and ears on the marketplace," providing general managers with information about competitors for Webb's development of marketing and pricing strategies. Id.

ISRs' additional duties include providing technical support to outside salespersons -- who are not as "technically savvy" as ISRs -- such as information on the selection and sufficiency of particular products. ISRs also perform various duties after a particular sale is made, including tracking Webb inventory once a customer makes an order, following up on an order's shipping status, interacting with third-party manufacturers if necessary, and addressing customer complaints. Id.

ISRs are compensated in accordance with grade levels as determined by seniority and experience, as well as pay tiers within those grade levels, which are determined by an ISR's annual

performance appraisal. Id. at 13-14. To document ISRs' performance appraisals, Webb uses a standard form completed by each ISR's general manager. The form is divided into two sections: section A, which looks at "key responsibilities," and section B, which measures "behavioral responsibilities." The manager completing the form assigns ratings for a set of criteria within each of these sections based on software metrics that Webb uses to track ISRs' activities during the work day. Id. at 13.

Section A measures "key responsibilities" by assessing ratings for an ISR across four categories. The first, "sales and GP budget," asks if the employee met sales and profit targets for the year. See id. The second, "bid and bid follow-up," is based on the number of bids written, win rate, and follow up rate. Third, "open orders" measures the number of open order sales past due, open orders past due, and open orders with follow up required. Fourth and finally, "communication" is measured by the number of phone calls answered, not answered, as well as the number of an ISR's calendar entries.

As for Section B, the "behavioral responsibilities" component measures "customer focus"; "drive for results"; "integrity, interpersonal savvy, and organizational agility"; "listening and negotiating"; "functional/technical skills"; "technical learning"; and "problem solving." For example, the "customer focus" rating is based on whether the ISR, among other

things, "[i]s dedicated to meeting the expectations and requirements of internal and external customers," and "[a]cts with customers in mind." Similarly, "drive for results" measures if an ISR is "consistently one of the top performers" and is "[v]ery bottom-line oriented."

## B.

After completing an investigation, the Secretary filed suit against Webb in July 2020. In addition to asserting an FLSA retaliation claim not relevant here, the Secretary alleged that Webb misclassified its ISRs as administrative employees exempt from the FLSA's overtime and recordkeeping requirements, failed to pay ISRs the requisite overtime premium under the FLSA for certain weeks, and failed to maintain records of hours worked for non-exempt employees. After discovery, the district court granted the Secretary's motion for partial summary judgment on both its overtime and recordkeeping claims. F.W. Webb Co., 677 F. Supp. 3d at 28-29.

The district court found that Webb's core business purpose was to sell its products, and that the ISRs' primary duty was to make sales by servicing Webb's customers. Id. at 20. Accordingly, since the ISRs effectively "produce the product or provide the service that the company is in business to provide," id. at 19 (quoting Walsh v. Unitil Serv. Corp., 64 F.4th 1, 7 (1st Cir. 2023)), the district court concluded that the ISRs' primary

- 8 -

duty was not "directly related to the management or general business operations of the employer" as required to qualify for the administrative employee exemption, 29 C.F.R. § 541.200(a)(2). The court found that the FLSA's overtime and recordkeeping requirements applied to ISRs, and that Webb violated both requirements by failing to pay ISRs overtime or keep proper records. F.W. Webb Co., 677 F. Supp. 3d at 28-29. After all remaining claims and defenses were resolved by agreement and final judgment was entered in the Secretary's favor, Webb's timely appeal followed.

## II.

We review a district court's entry of summary judgment de novo, viewing the record in the light most favorable to the nonmovant -- here, Webb -- and drawing all reasonable inferences in its favor. Martínez v. Novo Nordisk Inc., 992 F.3d 12, 16 (1st Cir. 2021). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## A.

The FLSA requires that covered employers pay certain employees an overtime premium "at a rate not less than one and one-half times the regular rate at which [they are] employed." 29 U.S.C. § 207(a)(1). Employers must also keep records tracking covered employees' work hours. Id. § 211(c); 29 C.F.R. § 516.2(a).

The FLSA exempts from these provisions "any employee employed in a bona fide executive, administrative, or professional capacity . . . as such terms are defined and delimited from time to time by regulations of the Secretary." 29 U.S.C. § 213(a)(1). The Secretary's regulations define those working in an "administrative" capacity as those employees: (1) who are compensated on a salary or fee basis pursuant to 29 C.F.R. § 541.600 at a rate of not less than $844 per week (subject to certain exceptions); (2) whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a). To fall under the exemption, "each of the three prongs must be satisfied and the employer bears the burden of establishing each prong." Unitil Serv. Corp., 64 F. 4th at 5 (citing Reich v. John Alden Life Ins. Co., 126 F.3d 1, 7-8 (1st Cir. 1997)).

The parties do not dispute that Webb's ISRs meet the applicable salary basis test (prong one) and the independent judgment and discretion test (prong three) to qualify for the administrative employee exemption. This appeal therefore turns on the exemption's second prong, i.e., whether their "primary duty is the performance of office or non-manual work directly related to

- 10 -

the management or general business operations of the employer or the employer's customers."[1]  29 C.F.R. § 541.200(a)(2).

The Secretary's regulations expand on the meaning and scope of the exemption's "primary duty" requirement.  First, "primary duty" is defined as "the principal, main, major or most important duty that the employee performs," which "must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." Id. § 541.700(a). The regulations note that "[t]he amount of time spent performing exempt work can be a useful guide" to the analysis, and thus "employees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement." Id. § 541.700(b).  "Time alone, however, is not the sole test,"

---

[1]  The Secretary's regulations also provide that:

> An employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's customers.  Thus, for example, employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt.

29 C.F.R. § 541.201(c).  Here, Webb has never argued that the ISRs' primary duty directly relates to the management or general business operations of Webb's customers as opposed to Webb itself.  We therefore find any such argument waived.  See United States v. Zannino, 895 F.2d 1, 9 n.7, 17 (1st Cir. 1990) (noting that arguments not raised below are deemed waived on appeal, as are issues only "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation").

- 11 -

and "[e]mployees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the . . . requirement if the other factors support such a conclusion." Id. Those factors include, inter alia, "the relative importance of the exempt duties as compared with other types of duties" and "the employee's relative freedom from direct supervision." Id. § 541.700(a).

Additionally, the regulations make clear that employees will meet the primary duty requirement only if they "perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." Id. § 541.201(a). To that end, the regulations also provide that:

> Work directly related to management or general business operations [can] includ[e], but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations[;] government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

Id. § 541.201(b).

We now consider whether the ISRs' "primary duty" is "directly related to the management or general business operations" of Webb under the FLSA's administrative employee exemption.[2]   29 C.F.R. § 541.200(a)(2).   This court recently clarified that, in conducting this analysis, "it is often useful to identify and articulate the business purpose of the employer," meaning "the production or provision of 'the very product or service that the' employer . . . 'offers to the public.'" Unitil Serv. Corp., 64 F.4th at 6 (quoting John Alden Life Ins. Co., 126 F.3d at 9).   Here, the district court identified Webb's business purpose as "produc[ing] wholesale sales of its products to its customers." F.W. Webb Co., 677 F. Supp. 3d at 20.   Webb did not dispute this characterization of its business purpose below and does not challenge it on appeal. We thus accept it as an undisputed fact for purposes of our analysis.

Having identified Webb's business purpose, we next conduct a "relational" analysis, "compar[ing] the employee's primary duty to the business purpose of the employer" to determine whether that duty "directly relates to the business purpose of the employer or, conversely, is directly related to the 'running or servicing of the business.'" Unitil Serv. Corp., 64 F.4th at 6-7

---

[2]   Webb does not claim that ISRs' primary duty relates to the management or general business operations of Webb's customers.

(quoting 29 C.F.R. § 541.201(a)).  Put another way, we consider "whether an employee's primary duties are 'ancillary' to the business's 'principal production activity' or 'principal function.'"  Id. at 7 (quoting John Alden Life Ins. Co., 126 F.3d at 10).[3]

We agree with the district court that the undisputed facts show that the ISRs' primary duty is "to help sell Webb's products" by delivering discrete customer sales, and that this duty is "'directly related' to Webb's business purpose of making wholesale sales of its products."  F.W. Webb Co., 677 F. Supp. 3d at 20, 22.  The ISRs are therefore ineligible for the exemption. Id. at 20.

_____

[3] Unitil Service Corporation noted that its analytical framework "has its roots in what has sometimes been referred to as the 'administrative-production dichotomy,'" which, while not dispositive, "can be useful in assessing whether the [primary duty requirement] has been satisfied."  64 F.4th at 7.  We find that for a wholesaler like Webb, Unitil Service Corporation's analysis is instructive.  We therefore reject Webb's assertion that the district court's implicit reliance on the administrative-production dichotomy was error.  Nor do we read the district court opinion as having treated this dichotomy as dispositive.

Additionally, because the district court's use of the administrative-production dichotomy was proper, we reject Webb's argument that the district court's reliance on Martin v. Cooper Electric Supply Co., 940 F.2d 896 (3d Cir. 1991) somehow requires reversal.  Even assuming, arguendo, that Martin is not as persuasive as the district court found, the district court never considered itself bound by Martin.  So, Webb's quibbles with some stale aspects of Martin's reasoning -- such as its narrow construction of FLSA exemptions -- miss the mark.

Indeed, there is simply no support for the claim that ISRs primarily function to "promote sales generally" or to provide some amorphous advisory or technical support role as opposed to delivering individual sales of Webb products themselves. Webb admits that ISRs do not work in "marketing," that they directly interact with customers throughout the sales process, and that they generate revenue for Webb in the form of sales that they make. The record does not show that ISRs have any policymaking authority within Webb apart from providing information to those formulating policy, or that they have managerial duties over other employees. Even if ISRs sometimes provide technical support to outside salespersons, there is no claim of that being their primary duty. In sum, ISRs do not "perform work directly related to assisting with the running or servicing" of Webb, as distinguished, for example, "from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201(a). Webb is a wholesaler, and ISRs make those wholesales. Their primary duties are not "administrative" in any sense of the word.

In an attempt to ward off this conclusion, Webb argues that the ISRs' primary duty involves exemption-qualifying "high-level customer service" and that the district court committed several errors in finding otherwise. In particular, Webb argues that the district court improperly discounted evidence

of ISRs' work as "advisors, consultants, and concierges" to deliver "solutions" and ensure customer satisfaction, and that "these customer service duties constitute the bulk of ISRs' work time." To that end, Webb points to several affidavits from individual ISRs stating that they spend a majority of their time providing such "advisory" duties while only a small percentage of their time "quoting specific parts."[4]

Much the same could be said of the many salespersons in many industries who advise customers in selecting a product with the aim of at some point making a sale. Consider salespersons in a clothing store. They can be said to provide high-level customer service advising clients on size and style choices to ensure customer satisfaction by providing clothing solutions. Yet these individuals are clearly not exempt under the FLSA. Reiseck v. Universal Commc'ns of Miami, Inc., 591 F.3d 101, 107 (2d Cir. 2010), abrogated in part by Encino Motorcars, LLC v. Navarro, 584 U.S. 79, 87 (2018).

We also reject Webb's passing argument -- made during oral argument but nowhere in its briefs -- that our decision in

---

[4] On this point, Webb fails to specify what if any portion of the ISRs' work time is spent performing post-sale concierge work "beyond any actual sale." We thus analyze ISRs' purported "high-level customer service responsibilities" in the aggregate. And in any event, Webb elsewhere concedes that the ISRs perform no customer-service duties "outside the context of making sales or sales that ha[ve] been made."

Cash v. Cycle Craft Co., 508 F.3d 680, 683 (1st Cir. 2007), coupled with the Secretary's examples of exempt administrative employees at 29 C.F.R. § 541.203, counsels otherwise. For one, as the district court found, Cash is distinguishable because the exempt Harley-Davidson employee in question was responsible for improving customer satisfaction generally and was not involved in individual sales. F.W. Webb Co., 677 F. Supp. 3d at 22 (discussing Cash, 508 F.3d at 681–82, 686); cf. John Alden Life Ins. Co., 126 F.3d at 10 (noting the distinction between "promoting sales" generally and sales efforts "focused simply on particular sales transactions"). Additionally, the thrust of this well-worn distinction between particular sales and general sales promotion points to the conclusion that ISRs are more akin to non-exempt employees whose primary duty is "selling financial products" as opposed to those whose primary duties involve "advising the customer regarding the advantages and disadvantages of different financial products" and "marketing, servicing or promoting the employer's financial products." 29 C.F.R. § 541.203(b). At bottom, customer advice rendered in the context of making a particular sale is simply not "directly related to the management or general business operations" of an employer whose core business purpose is making sales. Id. § 541.200(a)(2).

Webb also analogizes the ISRs to a class of employees this court found exempt in another case: Marcus v. American

Contract Bridge League, 80 F.4th 33 (1st Cir. 2023). Following its penchant for avoiding a "relational" analysis comparing the ISRs' primary duty to Webb's business purpose under the rubric of Unitil Service Corporation, see 64 F.4th at 6, Webb instead trains its analysis on comparing the ISRs' duties to those of "field supervisors and area managers" working for the bridge tournament operator in Marcus. 80 F.4th at 48-49. Webb argues that because the exempt field supervisors and area managers in Marcus spent 25 percent of their time performing "high-level customer service-oriented responsibilities" that directly related to the running of the bridge organization's business, id. at 49, the ISRs -- whom Webb says spend 50-95 percent of their time performing similar work -- are exempt a fortiori. But this argument misconstrues what Marcus actually held.

In Marcus, the employees in question were expected (1) to "develop, implement, and manage strategic and long-term processes and programs, including tournament planning/review"; (2) to be the "[f]irst point of contact for issues related to tournament operations and staff"; (3) to "[e]stablish and maintain effective relationships with tournament sponsors"; and (4) to exercise "significant supervisory authority over other employees." Id. at 48-49. Therefore, the court found that the field supervisors and area managers' primary duty was directly related to the running and management of the bridge tournament operator.

See id. at 49. Marcus never made any categorical finding that the 25 percent of the employees' time spent performing customer-service work was sufficient to satisfy the exemption's primary duty requirement. Rather, it properly reached its conclusion "based on all the facts in [that] particular case, with a major emphasis on the character of the employee[s'] job as a whole." 29 C.F.R. § 541.700(a).

Moreover, Webb admits that -- unlike the employees in Marcus who were charged with developing "long-term processes and programs," 80 F.4th at 48 -- the ISRs do not perform any customer-service duties "outside the context of making sales or sales that had been made." And also unlike those employees, ISRs do not exercise any significant supervisory authority over other employees. Thus, even taking Webb's argument on its face, Marcus does not move the needle toward finding the ISRs exempt.

Nor is there much to support the notion that ISRs are merely internal technical support specialists in contrast to Webb's customer-facing outside and counter salespersons. There is no dispute that ISRs themselves generate revenue for Webb in the form of producing particular sales, or that ISRs liaise with customers directly, from the initial communication to after an order is made. While sometimes an ISR may be "latched onto" an outside salesperson to provide technical support for a customer, the record admits to no general structure whereby the outside

salespersons deal with customers while ISRs provide merely internal support to the outside salespersons. Rather, Webb itself asserts that ISRs are charged with dealing with Webb's more important customers themselves. This conclusion also finds further support in how Webb measures ISR performance for purposes of compensation, which considers each ISR's sales and profits, the number of bids written that lead to completed sales, the number of phone calls made, and even how "bottom-line oriented" each ISR proves to be.

All in all, it strains credulity to read the ISRs' amorphous customer-service duties as anything but central to Webb's business purpose of producing wholesale sales of its products. If we accepted that ensuring "customer satisfaction" and the "long-term integrity of the business" through making individual sales was sufficiently ancillary to Webb's business purpose to render ISRs exempt, then few salespersons would ever receive FLSA overtime protection.

**III.**

For the foregoing reasons, the judgment of the district court is <u>affirmed</u>.